**Floyd HURST, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PRESTON TRUCKING COMPANY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 21, 2003.

Decided April 8, 2003.

Reargument Denied June 12, 2003.

---

Jason M. Weinstock, Harrisburg, for petitioner.

James F. Carl, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, COHN, Judge, JIULIANTE, Senior Judge.

OPINION BY Judge PELLEGRINI.

Floyd Hurst (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming that portion of the Workers' Compensation Judge's (WCJ) decision denying his claim petition and reversing that portion of the WCJ's decision granting one of his penalty petitions.

Claimant was employed as a driver by Preston Trucking Company (Employer). On July 17, 1998, Claimant was involved in a motor vehicle accident when the tractor-trailer truck he was driving flipped over. Employer issued a Notice of Temporary Compensation Payable (NTCP) on July 29, 1998, indicating a diagnosis of "left shoulder strain, cervical strain, bruise to left calf" and stating that payments began on July 18, 1998, and would continue for 90 days ending on October 18, 1998. On October 15, 1998, Employer sent Claimant a notice stopping temporary compensation payable stating that it had decided not to

accept Claimant's claim of a work-related injury, as well as a notice of Worker's Compensation denial indicating that although an injury took place, Claimant was not disabled as a result of the injury. Employer filed a copy of the notice with the Department of Labor which was received on October 23, 1998.

Claimant filed a Claim Petition on October 21, 1998, alleging that he was totally disabled as a result of a work-related injury he suffered on July 17, 1998, to his lower back, left shoulder, neck and left calf. He also filed a penalty petition alleging that Employer had violated the Workers' Compensation Act (Act)[1] by failing to issue a notice of compensation payable based on the results of its investigation and medical evidence it received. At the first hearing before WCJ Crum on both of the petitions, Claimant made a motion to have the NTCP converted into a notice of compensation payable because Employer had not timely filed the notice stopping temporary compensation payable with the Department of Labor. Employer argued against that motion, only stating that the denial was issued because Claimant was released to return to his pre-injury job but resigned from his employment.

In support of his claim petition, Claimant testified that he had driven a tractor-trailer for Employer for over ten years and hauled freight from terminal to terminal. On July 17, 1998, he stated that he was driving on Route 81 when his truck jerked toward a guardrail and tipped over, causing him to fall from the driver's seat to the passenger's seat about five to six feet. He stated that the only way he could get out was to kick out the windshield. Once he got out of the truck, Claimant stated that he walked around to the front on the truck, but then saw a delivery van coming at him which "bumped" him twice and he dove into a ditch in the nearby woods. After those events, Claimant stated that he had very strong pain in his neck, shoulder and left calf as well as his lower back and was treated at several hospitals and received rehabilitation. He further testified that because he was going to be discharged due to the accident, he resigned instead and filed a grievance.[2] However, prior to resigning, he had asked Employer three times for light-duty work which was repeatedly refused. Claimant concluded by stating that he began a new job with Advanced Auto Parts on February 16, 1999, but still suffered from pain in his neck, left shoulder and lower back.

At the next hearing, Claimant testified that he had begun a new job on August 18, 1999, with Voith Hydro and renewed his motion to have the NTCP converted. WCJ Crum indicated her intention to grant the motion and also instructed Employer to file termination and/or suspension petitions. She then closed the record on the claim and penalty petitions. WCJ Crum issued an interlocutory order on August 26, 1999, requiring Employer to pay temporary total indemnity benefits to Claimant for the period of October 16, 1998, through February 13, 1999, and partial indemnity benefits after February 13, 1999, based on Claimant's actual earnings.

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1—1041.4, 2501–2626.

2. Claimant's testimony also indicated that he resigned because Employer told him he would " 'fight' any legal findings or cases pertaining to a lawsuit that is probably going to happen because of the extent of the accident itself, because of being hit by another vehicle and two people dying." (Reproduced Record at 31a–32a.) The record does not go into detail, but it appears from both Claimant's testimony and the testimony of Employer's medical witness that another vehicle struck the back of the overturned tractor-trailer resulting in two deaths.

Employer filed a suspension petition seeking suspension as of October 15, 1998, alleging that Claimant chose to resign his position rather than return to his pre-injury position with Employer and also requested a supersedeas. Employer also filed a termination petition alleging that Claimant was fully recovered as of April 15, 1999, based upon the medical opinion of Michael Mitrick, D.O. (Dr. Mitrick). On September 23, 1999, Claimant filed a second penalty petition alleging that Employer had failed to abide by WCJ Crum's August 26, 1999 order, and on February 3, 2000, he filed a petition to reinstate compensation benefits alleging that as of December 15, 1999, he had a worsening of his condition and a decrease in earning power.

The case was reassigned to WCJ Tarantelli, and at the first hearing before her, the parties agreed to consolidate Claimant's new penalty petition, his earlier claim and penalty petitions, his reinstatement petition and Employer's termination and suspension petitions. Claimant also indicated that he wanted to include in the reinstatement petition the recognition of an injury to his left ulnar nerve as a result of his injury on July 17, 1998. WCJ Tarantelli indicated that she intended to rescind the interlocutory order of WCJ Crum granting Claimant's motion to have the NTCP converted to a notice of compensation payable, and by interim interlocutory order dated June 14, 2000, she denied Claimant's motion. She also denied Employer's request for supersedeas.

At the next hearing, Claimant testified that Michael Sicuranza, M.D.[3] (Dr. Sicu-

ranza) performed surgery on February 22, 2000, on his ulnar nerve that had been causing him pain and numbness in his arm, and he had not worked since that date.[4] While he no longer suffered from pain and numbness in his arm, Claimant stated that he still suffered from shoulder and low back pain. He also stated that he had not worked from December 23, 1999, through February 22, 2000, and was released on December 23, 1999, by Voith Hydro for attendance reasons.

In its defense and in support of its own petitions, Employer offered the expert testimony of Dr. Mitrick, also board-certified in orthopedic surgery, who reviewed Claimant's medical records, including an MRI and a CAT scan showing C4–5 disc protrusion pre-dating the injury, x-rays also showing spondylosis at C3–4 and C4–5, and an EMG study from October 14, 1997, showing evidence of bilateral carpal tunnel syndrome. His diagnosis of Claimant was that: (1) he suffered from cervical discogenic disease at C3–4 and C4–5 which pre-dated the injury; (2) he suffered from cervical sprain and left shoulder contusion at the time of the accident; (3) he had no evidence of a ruptured disc; (4) Claimant's complaints could have been related to an aggravation of his underlying degenerative condition; and (5) Claimant's complaints of low back pain were resolved. Dr. Mitrick opined that as of April 15, 1999, Claimant could have returned to his pre-injury job with Employer as a truck driver without restriction.

Finding the opinion of Claimant's medical expert competent, unequivocal and per-

---

**3.** Dr. Sicuranza opined that Claimant's accident on July 17, 1998, directly caused his problems with his left arm.

**4.** Because neither the original NTCP nor his claim petition recognized or mentioned ulnar nerve injury, Claimant sought to have that injury determined to be work-related and

compensable. Employer opposed the amendment, but after hearing from both Claimant's and Employer's medical experts, the WCJ found in favor of Claimant, and Employer appealed to the Board which affirmed. Employer has not appealed that determination.

suasive regarding Claimant's left arm pain and surgery being related to his work injury on July 17, 1998, WCJ Tarantelli found, among other things, that Claimant was entitled to recognition of work-related injuries to the cervical spine, lower back, left shoulder and left arm; however, she also found that Claimant's work-related low back injury had resolved as of April 15, 1999. As to his periods of disability, WCJ Tarantelli noted that Claimant had claimed five periods of disability:

- October 15, 1998—February 15, 1999: seeking temporary total indemnity benefits following resignation from Employer;
- October 15, 1998—August 17, 1999: seeking partial indemnity benefits based on his job at Advanced Auto Parts that paid less than his average weekly wage;
- ?August 18, 1999—December 15, 1999: seeking continuing partial benefits during his employment with Voith Hydro because he was earning less than his average weekly wage;
- December 15, 1999—January 1, 2002: seeking reinstatement to temporary total indemnity after he was terminated from Voith Hydro; and
- January 1, 2002—ongoing: seeking partial indemnity benefits based on loss of earnings from an unidentified new job.[5]

WCJ Tarantelli found that Claimant's discharge from employment with Employer was for good cause and not related in any way to his work injury, and, therefore, he was not entitled to indemnity benefits from October 15, 1998, to February 15, 1999. Further, she found that because Claimant's loss of earnings beginning on October 15, 1998, resulted from his discharge for cause, he was not entitled to payment of partial indemnity benefits during the time period he worked for Advanced Auto Parts at a loss of earnings from October 15, 1998, to August 17, 1999. Additionally, because his discharge from Voith Hydro was also for good cause because it was due to his absenteeism, he was not entitled to indemnity benefits from December 15, 1999, to January 1, 2002. However, because WCJ Tarantelli concluded that the medical evidence regarding Claimant's upper extremity condition had been resolved in his favor, his surgery and recuperation period were the result of a work-related injury, and he was entitled to payment of temporary total indemnity benefits from February 22, 2000, through January 1, 2001, followed by a payment of partial indemnity benefits based on Claimant's actual earnings from his new employment.

Regarding the penalty petitions, WCJ Tarantelli concluded that Claimant was entitled to payment of penalties by Employer at a rate of 25% for its late payment because Employer refused to pay them pursuant to WCJ Crum's order of August 26, 1999, because it was in bankruptcy, and it was only Claimant's filing of the penalty petition that pressed Employer into action on this issue. As to the second penalty petition in which Claimant alleged Employer failed to properly investigate his injury and issue a notice of compensation payable, WCJ Tarantelli did not assess a penalty because she determined that Employer presented ample evidence to support its position that Claimant did not suffer a work-related disability, and that his carpal tunnel, cubital tunnel and ulnar nerve problems were not causally related to the July 17, 1998 accident. Similarly, because she determined that Employer

---

**5.** Claimant's counsel advised that Claimant was working 40 hours per week at $11 per hour, but did not say who the employer was.

had a reasonable basis to contest Claimant's claim petition, WCJ Tarantelli did not assess any attorney fees against Employer.

WCJ Tarantelli concluded that Employer was entitled to a credit for benefits erroneously paid to Claimant in accordance with WCJ Crum's August 26, 1999 interlocutory order and entitled to a termination of benefits as they related to Claimant's work-related low back injury. She then entered the following order:

- Claimant's Reinstatement Petition is granted in part and denied in part.
- Employer's termination petition alleging full recovery as of April 15, 1999, is granted in part and denied in part.
- Employer's suspension petition seeking suspension as of October 15, 1998, is moot.
- Claimant's penalty petition alleging failure to comply with WCJ Crum's interlocutory order of August 26, 1999, is granted.
- Claimant's penalty petition alleging failure to investigate and issue a notice of compensation payable is denied.
- Claimant's request for unreasonable contest of attorney fees is denied.
- Claimant's entitlement to benefits relating to his work-related low back injury is terminated as of April 15, 1999.
- Employer is ordered to pay Claimant temporary total indemnity benefits during the time period 2/22/2000 through 1/1/2001.
- Employer is ordered to pay Claimant a partial indemnity benefit after 1/1/2001 based on his actual earnings from his new employment.

- Employer is entitled to a credit for benefits erroneously paid to Claimant under the notice of temporary compensation payable.

Claimant filed an appeal with the Board arguing that WCJ Tarantelli erred (1) in rescinding Judge Crum's order directing Employer to reinstate payments based upon a conversion of the NTCP to a notice of compensation payable; (2) in denying disability benefits because there was no evidence he was terminated for good cause from Employer; (3) in granting Employer a credit for benefits it paid pursuant to WCJ Crum's order; and (4) in denying him an award for unreasonable contest and attorney fees. Employer also filed an appeal arguing that WCJ Tarantelli erred in awarding penalties for its failure to make timely payments when she rescinded the order converting the NTCP into a notice of compensation payable. The Board affirmed WCJ Tarantelli's decision in all respects except regarding her award of penalties to Claimant for Employer's failure to make timely payments because she had rescinded the order directing it to do so. This appeal by Claimant followed.[6]

## I.

Claimant first contends that the Board erred by holding that Employer's notice that it was ceasing to make payments pursuant to an NTCP was timely filed with the Department of Labor pursuant to Section 406.1 of the Act,[7] 77 P.S. § 717.1, and the NTCP was not automatically converted to a notice of compensation payable. Both the Board and WCJ Tarantelli found that the notice was timely filed because it had

---

**6.** Our scope of review of the Board's decision is limited to determining whether findings of fact are supported by substantial evidence, whether errors of law were made, or whether constitutional rights were violated. *Kramer v.* *Workers' Compensation Appeal Board (Rite Aid),* 794 A.2d 953 (Pa.Cmwlth.2002).

**7.** *Added by* the Act of February 8, 1972, P.L. 25.

been sent to Claimant within five days after the last payment was made.

Section 406.1 of the Act provides the following, in pertinent part, regarding an NTCP and its conversion to a notice of compensation payable:

(a) The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due either pursuant to an agreement upon the compensation payable or a notice of compensation payable as provided in section 407 or pursuant to a notice of temporary compensation payable as set forth in subsection (d) ...

\* \* \*

(d)(1) In any instance where an employer is uncertain whether a claim is compensable under this act or is uncertain of the extent of its liability under this act, the employer may initiate compensation payments without prejudice and without admitting liability pursuant to a notice of temporary compensation payable as prescribed by the department.

\* \* \*

(2)(ii) the payment of temporary compensation entitles the claimant to a maximum of ninety (90) days of compensation;

\* \* \*

(4) Payments of temporary compensation may continue until such time as the employer decides to controvert the claim.

(5)(i) If the employer ceases making payments pursuant to a notice of temporary compensation payable, a notice in the form prescribed by the department

*shall be sent to the claimant and a copy filed with the department, but in no event shall this notice be sent or filed later than five (5) days after the last payment.*

(6) *If the employer does not file a notice under paragraph (5) within the ninety-day period during which temporary compensation is paid or payable, the employer shall be deemed to have admitted liability and the notice of temporary compensation payable shall be converted to a notice of compensation payable.*

(Emphasis added.) To summarize these notice requirements, Subsection (5)(i) requires an employer, if it desires to stop payment within the 90–day period that temporary compensation benefits are payable, to send a notice to the claimant and a copy of that notice to the Department of Labor that payments will cease no later than five days after the last payment. Subsection (6) provides that if the notice is not sent within the 90 days, the NTCP shall be converted to a notice of compensation payable. Subsection (6) does not provide an alternative filing date to the five-day period in Subsection (5)(i), but only indicates that if the five-day filing requirement is not met, the NTCP will convert to a notice of compensation payable.

▌ Although the envelope in the record was date-stamped on October 16, 1998, indicating the date that Employer *sent* the notice, unlike Subsection (5), Subsection (6) of the statute requires that the notice be *filed* within the 90–day period during which temporary compensation was paid. Because Employer's notice was not received by the Department of Labor until October 23, 1998, five days after the end of the 90–day period, it was not filed within the 90–day period, making its notice not

timely filed.[8] Consequently, we need not address whether the notice to Claimant alone was sufficient without a copy being filed with the Department of Labor under Subsection (5)(i) because under Subsection (6), the notice had to be filed at the end of the 90–day period with the Department of Labor and Claimant.

■ As a result, the procedural posture of the case now before us is somewhat confusing. Because the notice of compensation payable should have remained in place, Claimant should have continued receiving benefits until Employer filed a suspension or termination petition. Because there was an existing notice of compensation payable, Claimant did not have the burden of reproving his original injuries in his claim petition, namely, his "left shoulder strain, cervical strain, bruise to left calf," but he did have to prove that his ulnar surgery was related to his July 17, 1998 injuries. With that in mind, Claimant's claim petition should have been dismissed as moot except as to his claim for benefits related to his ulnar injury and surgery.[9]

## II.

■ Initially, Claimant contends that the WCJ erred by not granting penalties when Employer failed to comply with WCJ Crum's interlocutory order of August 26, 1999. Because we have determined that the notice of compensation payable should have stood, we agree that Employer was responsible for penalties for failing to comply with WCJ Crum's interlocutory order.

■ Claimant then argues that WCJ Tarantelli erred in refusing to impose penalties and attorney fees based on her determination that Employer had a reasonable contest because Employer did not present any evidence that he did not suffer a work-related injury on July 17, 1998.[10] WCJ Tarantelli addressed this argument directly in her decision explaining why she did not impose penalties or award attorney fees, stating:

8. We note that although there is a special rule for filing with the Board in 34 Pa.Code, § 111.3(a)—"if filing is by mail, it is deemed complete upon depositing in the mail . . . as evidenced by the postmark"—this court in *Sellers v. Workmen's Compensation Appeal Board (HMT Construction Services)*, 687 A.2d 413 (Pa.Cmwlth.1996), held that where the envelope does not have an official postmark from the United States Postal Service, the appeal must be deemed filed when received by the Board. Therefore, if Employer had not postmarked its own envelope but allowed the postal service to postmark it, it would have been timely filed under the rules when deposited in the mail, even if received by the Board after the 90–day period.

9. The other matters still alive are Claimant's appeal from WCJ Tarantelli's decision regarding Employer's termination petition, which she granted in part as to Claimant's low back injury, and Employer's suspension petition suspending benefits as of October 15, 1998,

due to Claimant resigning from his employment.

10. Section 440(a) of the Act provides:

In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fees, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

77 P.S. § 996.

In his Brief, Claimant's counsel focuses on the fact that Defendant did not present any evidence that Claimant did *not* suffer a work-related injury on 7/17/98. This is true; in fact, counsel for Defendant *admitted* at the first hearing that an injury *had* occurred on 7/17/98, explaining that benefits were paid until Claimant was released to return to work.[11]

*This litigation was never about whether Claimant was injured on 7/17/98*—it was about the extent of the injuries he suffered in the accident, and whether he was entitled to any wage loss due to his work injuries. These two questions remained viable throughout the entire multi-year litigation of these six Petitions.

Defendant presented ample competent evidence which supported its position that Claimant suffered no work-related disability, and that his carpal tunnel, cubital tunnel, and ulnar nerve problems were not causally related to the accident on 7/17/98. In fact, Defendant has prevailed, in large part, on the issue of Claimant's entitlement to indemnity benefits. Accordingly, no Penalty will be assessed on this issue.

As to the request for the imposition of unreasonable contest attorney fees, the reasoning set forth above illustrates that Defendant did have a reasonable basis to contest each of Claimant's assertions—Claimant's entitlement to indemnity benefits and the extent of his work-related injuries remained at issue throughout these extensive proceedings.

Thus, no attorney fees will be assessed as a cost to Defendant.
(Emphasis in original.) (WCJ Tarantelli's August 15, 2001 decision at 39–40.) Because we agree with the well-reasoned decision of WCJ Tarantelli, Claimant was not entitled to penalties and attorney fees for an unreasonable contest.

### III.

Claimant also argues that WCJ Tarantelli erred by allowing Employer to be credited for payments it made to Claimant pursuant to WCJ Crum's interlocutory order. More specifically, he contends that the credit should not have been granted because the NTCP became a notice of compensation payable, and there was no issue of fault on his part in receiving the money. Further, he argues that there is no procedure under the Act to create a credit for benefits properly paid, and if Employer were entitled to a credit, it would be required to seek relief from the supersedeas fund.

Claimant is correct that the Act does not provide any authority for reimbursement to an employer when there has been an overpayment of benefits. When there is an overpayment of benefits to a claimant who is not entitled to those payments, relief must be obtained from the supersedeas fund. *Murphy v. Workmen's Compensation Appeal Board (Ames Department Store)*, 146 Pa.Cmwlth.366, 605 A.2d 1297 (1992). However, because we have determined that WCJ Crum's interlocutory order was proper, recoupment by Employer from the supersedeas fund is not an option because benefits were properly paid.[12] Therefore, the Board erred in

---

11. WCJ Tarantelli stated in her decision that Employer was disputing any continuing work-related residuals from his work injuries, contending that any remaining disability was related to disorders that pre-existed the July 17, 1998 work injury, and also was challenging the causal connection between the July 17,

1998 accident and Claimant's left upper extremity problems.

12. As the Board explained in its decision:

We note that although Defendant [Employer] filed a Suspension Petition, this was

determining that Employer was entitled to a credit to recoup benefits under the equitable principle of unjust enrichment.

### IV.

Finally, Claimant argues that WCJ Tarantelli erred in refusing to award him benefits after October 15, 1998, because there was evidence that he suffered a work-related injury which disabled him from working at his pre-injury job, but there was no evidence of wrongful conduct by him which caused him to be terminated from Employer or Voith Hydro or work availability offered by Employer. Specifically, he points out that the only testimony offered regarding his resignation from Employer was his own in which he testified that he wrote a letter of resignation as a result of the injuries he sustained. As for his discharge from Voith Hydro, Claimant argues that the only evidence regarding the reason for his termination was his own testimony that he had been discharged due to absenteeism as a result of his work injury, not because of the accident.

Our review of the record indicates that Claimant was discharged from both Employer and Voith Hydro for reasons unrelated to his injuries, and, therefore, he was not entitled to benefits. Claimant testified that he submitted a resignation letter to Employer at the end of October 1998 as a result of the accident, not the injuries he received. At the hearing on February 17, 1999, before WCJ Crum, Claimant testified as follows:

Q. During this period of time, there has been talk previously about a resignation?

A. Uh-uh (yes), yes, sir.

Q. Can you please explain to us what occurred?

A. Well, basically what happened is I had filed a grievance because I was being discharged because of the accident, so I filed a grievance to fight it because I felt I did nothing wrong. When I went to—I was called up at the home and it was told to me it was a pre-hearing, we were basically putting our cards on the table to discuss what could be done.

* * *

Q. Okay. And can you explain why you resigned that day [at the meeting]?

A. I was told that Preston would fight any legal findings or cases pertaining to a lawsuit that is probably going to happen because of the extent of the accident itself, because of being hit by another vehicle and two people dying.

(Notes of Testimony from February 17, 1999 hearing at 23, 27.) Claimant further testified that he agreed to resign in exchange for Employer not contesting unemployment benefits and agreeing to have its attorneys represent him in any lawsuits arising from the fatal accident on July 17, 1998. (See Notes of Testimony from Feb-

only after a directive of Judge Crum following her issuance of the Interlocutory Order converting the NTCP to a NCP. Normally, Defendant would only be entitled to recoup from the fund those payments attributable to a claimant's period of disability *subsequent* to the date the request for supersedeas is filed. [Citation omitted.] Defendant filed its Suspension Petition, requesting supersedeas, on September 9, 1999. Thus, it would only be entitled to recoup payments

made that were attributable to any disability after September 9, 1999. This would allow Claimant to be unjustly enriched as he was not entitled to receive payments for disability which occurred prior to this date as it was not due to his work injury and Defendant was forced to make these erroneous payments under Judge Crum's flawed Order.

(Board decision of August 15, 2000, at 8, nt. 4.) (Emphasis in original.)

ruary 17, 1999 hearing at 35–36.) Clearly, from this testimony, Claimant was going to be discharged as a result of the accident he was involved with, including two fatalities, not due to his own injuries, and he made an arrangement with Employer to resign instead. In essence, Claimant was required to leave his position due to the accident, not his injuries.

As for his termination from employment with Voith Hydro for attendance problems, Claimant testified that he was terminated because he missed seven days of work due to a sore arm and shoulder. However, he also testified that Voith Hydro was very cooperative when he explained that he had to be out of work for surgery and go through a four-to-six-week recovery period and it told him it was not a problem. As WCJ Tarantelli stated in her decision, Claimant's testimony regarding the reason he was fired did not comport with his testimony that Voith Hydro was very cooperative. "Query: would an employer who was willing to let an employee take 6 weeks off for medical treatment—and willing to hold a job for him—fire that same employee for missing a mere six days of work because of the same medical problem? Such an account is illogical and must be rejected." (WCJ Tarantelli's decision of August 15, 2001, at 37.) WCJ Tarantelli only found Claimant credible in part and obviously did not find him credible regarding the reason he was terminated from employment with Voith Hydro. Because the WCJ is the ultimate factfinder and determiner of credibility, *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki)*, 140 Pa.Cmwlth.461, 593 A.2d 921, *petition for allowance of appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991), and Claimant failed to prove that he was entitled to continuing indemnity benefits as a result of losing work due to his work-related injuries,[13] WCJ Tarantelli did not err by refusing to award him benefits after October 15, 1998.

Accordingly, the decision of the Board is affirmed as to its decision that Claimant was not entitled to receive benefits after October 15, 1998, due to his discharge/resignation from employment and as to its decision that Claimant was not entitled to penalties for Employer's reasonable contest regarding his injuries. The decision of the Board is reversed as to its affirmance of the rescission of the notice of compensation payable, allowing Employer to receive a credit so that it could recoup its payments to Claimant, and its decision that Employer did not have to pay any penalties for failing to comply with WCJ Crum's interlocutory order of August 26, 1999.

### ORDER

AND NOW, this *8th* day of *April,* 2003, the order of the Workers' Compensation Appeal Board, dated August 15, 2002, at No. A01–2472, is affirmed as to its decision that Claimant was not entitled to receive benefits after October 15, 1998, due to his discharge/resignation from employment and as to its decision that Claimant was not entitled to penalties for Employer's reasonable contest regarding his injuries. The decision of the Board is reversed as to its affirmance of the rescission of the notice of compensation payable, allowing Employer to receive a credit so that it could recoup its payments to Claimant, and its decision that Employer did not have to pay any penalties for failing to comply with

---

13. *See, e.g., Somerset Welding and Steel v. Workmen's Compensation Appeal Board (Lee),* 168 Pa.Cmwlth.78, 650 A.2d 114 (1994), *peti-* *tion for allowance of appeal denied,* 540 Pa. 652, 659 A.2d 990 (1995).