Byron **BARRETT,** Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (SUNOCO, INC.),** Respondent.

**Sunoco, Inc. (R&M) and ESIS Wilmington WC, Petitioners**

v.

**Workers' Compensation Appeal Board (Barrett),** Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 25, 2009.

Decided Feb. 2, 2010.

Mark R. Schmidt, Media, for designated petitioner, Byron Barrett.

Neil T. Dombrowski, Paoli, for respondent, Sunoco, Inc.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Byron Barrett (Claimant) and his employer, Sunoco, Inc. (Employer), have filed cross-petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board).[1] The Board affirmed the Workers' Compensation Judge's (WCJ) denial of Employer's petition to terminate benefits and his denial of Claimant's challenge to an impairment rating evaluation (IRE) that resulted in a whole person impairment rating of seven percent. The Board also ordered Employer to reimburse Claimant for his cost to depose the doctor who did the IRE. In this appeal, Claimant challenges the results of the IRE, and Employer challenges the imposition of costs for Claimant's deposition of the IRE doctor.

1. By order dated May 26, 2009, the cross- petitions for review were consolidated.

Claimant has worked as an "operator"[2] at Employer's refinery since the 1970s. On June 17, 2001, Claimant stepped on a hatch cover which gave way. Claimant fell through the hatch, injuring his left shoulder. Employer issued a Notice of Compensation Payable (NCP) describing the injury as a left shoulder strain or sprain and providing for payment of total disability benefits. Claimant underwent shoulder surgery and returned to work with Employer at a light-duty position with no wage loss. Accordingly, Employer suspended Claimant's benefits as of December 30, 2002.[3]

On August 26, 2004, Claimant was involved in an automobile accident while being driven to an independent medical examination (IME), causing injuries to Claimant's neck and back. In November 2004, Employer issued a second NCP in which it "revised" the description of Claim-

ant's work injury to include a "cerv[ical] and lumbar strain sprain" and provided for payment of total disability benefits. Reproduced Record at 2 (R.R. ____). Claimant underwent low back surgery after the accident and has not returned to work.

■ Pursuant to Section 306(a.2) of the Workers' Compensation Act[4] (Act), Employer requested the Bureau of Workers' Compensation to designate a physician to perform an IRE in order to determine Claimant's degree of impairment.[5] James F. Bonner, M.D., performed the IRE on July 27, 2005, and concluded that Claimant had a seven percent impairment. As a result, on October 26, 2005, Employer gave Claimant a Notice of Change of Workers' Compensation Disability Status Form (Notice) stating that his workers' compensation status would be changed from total disability to partial disability in accordance with Section 306(a.2)(2) of the Act.[6]

---

2. Claimant did not describe the operator job except to say that it involves much physical labor including lifting and climbing.

3. Although the Notification of Suspension is not in the record, neither party disputes that it was issued. According to Claimant's testimony, he again stopped working as of February 23, 2004, on the advice of his doctor.

4. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 511.2. Section 306(a.2) was added by the Act of June 24, 1996, P.L. 350. Section 306(a.2)(1), which deals specifically with initial IRE requests, states:

When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred four weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the one hundred four weeks to determine the degree of impairment due to the compensable injury, if any. The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties approved board or its osteopathic equivalent

and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."
77 P.S. § 511.2(1).

5. "Impairment" is defined in Section 306(a.2)(8)(i) as "an anatomic or functional abnormality or loss that results from the compensable injury and is reasonably presumed to be permanent." 77 P.S. § 511.2(8)(i).

6. Section 306(a.2)(2) provides in relevant part:

If such determination results in an impairment rating less than fifty per centum impairment under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment," the employe shall then receive partial disability benefits under clause (b): Provided, however, That no reduction shall be made until sixty days' notice of modification is given.
77 P.S. § 511.2(2). This is a "self-executing" provision which allows an employer to unilat-

Claimant filed a review petition challenging the validity of the IRE. Then, after receiving the Notice, Claimant filed a second review petition challenging the change of his disability status. Believing that Claimant had fully recovered from his work-related injuries, Employer filed a termination petition. Claimant's review petitions and Employer's termination petition were heard in one proceeding before the WCJ. After the hearing began, Claimant orally amended his review petitions to expand the description of his 2004 injuries in the NCP to include more than a strain or sprain of the neck and lower back.[7]

Claimant testified live before the WCJ and by deposition. He explained that as a result of his 2001 injury, he continues to experience pain in his shoulder and has lost strength, which limits his shoulder function. He stated that he has experienced neck and low back pain since the August 2004 automobile accident and continues to experience significant pain, even after undergoing back surgery in January 2005. Claimant stated that he cannot return to his pre-injury operator job because it requires too much physical labor.

Claimant presented the testimony of Scott Rushton, M.D., a board certified orthopedic surgeon, who specializes in the spine. Dr. Rushton began treating Claimant on October 12, 2004, after his motor vehicle accident.[8] Dr. Rushton diagnosed Claimant with advanced lumbar disc degeneration in the base of the spine at L5–S1 that included a spondylolisthesis, meaning that the L5 bone had slipped forward onto the S1 bone. Dr. Rushton also diagnosed cervical spondylosis, which is cervical disc degeneration or arthritis. Dr.

Rushton opined that these pre-existing degenerative conditions were exacerbated by the automobile accident, thereby necessitating Claimant's lumbar fusion surgery. The surgery improved Claimant's low back pain, but Claimant continues to report pain in his back and neck and has not recovered from the effects of the automobile accident.

Claimant also presented the testimony of Anthony Mela, Sr., D.O., a general practitioner who began treating Claimant on June 3, 2005, for pain in his left shoulder, neck and low back. In spite of pain medication and physical therapy, Claimant's symptoms have not improved. Dr. Mela opined that Claimant has not fully recovered from his shoulder, neck and back injuries and cannot return to his pre-injury job with Employer. He has prohibited Claimant from working at a job that involves lifting, bending, squatting, crawling, kneeling or climbing.

Claimant deposed James Bonner, M.D., the doctor who performed the IRE on July 27, 2005. Dr. Bonner is board certified in pain management, physical medicine and rehabilitation, and he is certified by the Bureau of Workers' Compensation to perform IREs. In connection with this certification, Dr. Bonner completed a course based on the fifth edition of the AMA Guides to the Evaluation of Permanent Impairment (AMA Guides).

Dr. Bonner explained that there are two different models for determining impairment: the diagnosis-related estimate (DRE) model and the range of motion model. Dr. Bonner used the range of motion model for Claimant's left shoulder

---

erally modify the claimant's disability status to partial. *Gardner v. Workers' Compensation Appeal Board (Genesis Health Ventures)*, 585 Pa. 366, 380, 888 A.2d 758, 766 (2005).

7. Claimant also filed two identical penalty petitions alleging that Employer failed to pay

his medical bills. Both petitions were denied by the WCJ and are not relevant to the present appeal.

8. Dr. Rushton has not treated Claimant's left shoulder at all.

because the DRE model does not apply to shoulders. Because there was nothing objectively wrong in that area, a zero percent impairment for the shoulder was appropriate. However, because Claimant continued to complain of pain and had undergone shoulder surgery, Dr. Bonner set an impairment rating of three percent for the shoulder. Using the DRE model for Claimant's spine, Dr. Bonner found a twenty percent impairment of his lower back.[9] Five percent was attributable to the work-related exacerbation of his pre-existing condition, and the remaining fifteen percent was attributable to his pre-existing spondylolisthesis. Dr. Bonner found no objective abnormality in Claimant's cervical spine because his range of motion and deep tendon reflexes were normal. Therefore, Dr. Bonner was unable to assign an impairment rating to Claimant's neck condition. Based on Claimant's history, the physical examination and a review of numerous medical records, Dr. Bonner reached a whole person impairment rating of seven percent for Claimant.

Employer presented the testimony of Richard J. Mandel, M.D., a board certified orthopedic surgeon who performed IMEs of Claimant on October 19, 2004, and July 21, 2005. After the first IME, Dr. Mandel believed that Claimant had fully recovered from his 2001 shoulder injury. On the other hand, Dr. Mandel found that Claimant had not yet fully recovered from the mild sprain and strain of the neck and back he sustained in the 2004 automobile accident. After the second IME, Dr. Mandel opined that Claimant had also recovered from his neck and back sprain and strain; needed no further medical treatment for his work injuries; and was capable of returning to his pre-injury job

without restrictions. Dr. Mandel did not believe that Claimant's automobile accident exacerbated his pre-existing cervical and lumbar degenerative conditions.

After reviewing the evidence, the WCJ credited the testimony of Claimant, Dr. Rushton and Dr. Mela. The WCJ also credited the testimony of Dr. Bonner. The WCJ rejected Dr. Mandel's testimony. Based on these credibility findings, the WCJ granted the review petition to add exacerbation of pre-existing degenerative neck and low back conditions to the NCP. However, the WCJ denied Claimant's other review petitions, concluding that Claimant failed to establish that the IRE completed by Dr. Bonner was invalid. The WCJ denied Employer's termination petition because Employer failed to prove Claimant fully recovered from his work-related injuries. Finally, the WCJ ordered Employer to pay all of Claimant's litigation costs, including $3,000 charged by Dr. Bonner for his deposition.

Both Claimant and Employer appealed to the Board. The Board remanded for a determination of whether the expense associated with Dr. Bonner's deposition related solely to an issue on which Claimant did not prevail, in which case he should not be awarded that cost. The Board affirmed the WCJ's decision in all other respects.[10]

On remand, the WCJ "thoroughly reviewed the deposition of Dr. Bonner and [found] his testimony was limited to the Review Petition challenging the validity of the [IRE]." WCJ remand decision, February 28, 2008, at 2; Finding of Fact 12. Because he found that Dr. Bonner's deposition was related solely to the review petition, on which Claimant was not successful,

9. The range of motion model is unreliable for a back, according to Dr. Bonner.

10. Both parties filed petitions for review with this Court. We quashed the appeals because

the Board had remanded the matter to the WCJ for the exercise of his discretion, making the Board's order interlocutory and unappealable.

the WCJ determined that the expense for that deposition was not reimbursable. The WCJ otherwise reaffirmed his prior decision.

█ Claimant and Employer appealed. The Board reversed the WCJ with respect to the deposition fee, concluding that Dr. Bonner's deposition was also related to Employer's termination petition, on which Claimant did prevail. Accordingly, the Board ordered Employer to pay Dr. Bonner's deposition fee and affirmed the WCJ in all other respects. Both Claimant and Employer then petitioned for this Court's review.[11]

On appeal, Claimant presents two issues for our consideration.[12] First, Claimant argues that the IRE was invalid. Second, Claimant argues that the WCJ failed to issue a reasoned decision with respect to Dr. Bonner's testimony.

Employer raises three issues on appeal, all pertaining to Dr. Bonner's deposition. Employer challenges the propriety of the WCJ's decision to allow Claimant to depose Dr. Bonner; the Board's determination that Dr. Bonner's testimony related to the termination petition; and the Board's determination that Claimant's deposition of Dr. Bonner is a reimbursable litigation cost.

█ We first address Claimant's appeal.[13] Claimant argues that the Board erred in determining that the IRE was valid. First, Claimant argues that Dr. Bonner did not perform the IRE in conformance with the Act and the AMA Guides, because he failed to use both the DRE and range of motion models for determining impairment. Second, Claimant asserts that the IRE was invalid because Dr. Bonner failed to provide a rating for each one of Claimant's acknowledged work injuries.

During his deposition, Dr. Bonner described the DRE and range of motion models and explained why he used only the DRE model for Claimant's spine. He explained that:

[The AMA Guides] indicate that you should use both models, although it has been in our certification process brought to our attention and subsequently documented that the range of motion model has been found to be unreliable and not reproducible. And, therefore, you should always attempt to utilize the DRE model. In certain states, actually, the range of motion model has been determined to be illegal. And even in Pennsylvania, there are some computerized machines that do range of motion

---

11. This Court's scope and standard of review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

12. Claimant actually lists three issues, but we have combined the first two issues because they are interrelated.

13. Claimant suggests that before discussing his stated issues, this Court must first determine which party bears the burden of proof. Claimant contends that Employer did not re-

quest or complete the IRE within the proper time frame for Employer to qualify for an automatic change in disability status, *i.e.*, within sixty days of Claimant's receipt of 104 weeks of total disability benefits, and therefore Employer has the burden of proof. Because Claimant questions the allocation of the burden of proof and the timing of the IRE for the first time on appeal to this Court, he has waived the issue. *Budd Baer, Inc. v. Workers' Compensation Appeal Board (Butcher)*, 892 A.2d 64, 67 (Pa.Cmwlth.2006) (explaining that issues not raised before the WCJ and the Board are deemed waived). Therefore, we proceed with the burden of proof on Claimant as the party challenging the results of the IRE.

models that have not been proven to be reproducible. So it is usual and customary to do the diagnosis-related estimate in regard to spinal conditions.

R.R. 223. Dr. Bonner also testified that he used only the range of motion model for Claimant's shoulder because there is no DRE model for shoulders. Dr. Bonner could not establish a rating for Claimant's neck because there was no objective evidence of a neck problem.

■ We conclude that the IRE was valid. Section 306(a.2) of the Act, 77 P.S. § 511.2, states that the level of impairment is to be established using the most recent edition of the AMA Guides. Dr. Bonner based his IRE on the fifth edition of the AMA Guides, on which he is certified, and explained that the AMA Guides must be used in a way that comports with the physician's medical judgment. Dr. Bonner did so, and he examined each anatomical area associated with Claimant's work injury. Dr. Bonner then explained why both models could not be used for each injury and why Claimant's neck was not ratable. By contrast, Claimant has not cited any authority to support his claim that an IRE is invalid unless the physician uses both models and establishes a rating for each work injury. In effect, Claimant challenges the weight assigned to Dr. Bonner's testimony, a matter entrusted solely to the WCJ as the factfinder. *Saville v. Workers' Compensation Appeal Board (Pathmark Stores, Inc.)*, 756 A.2d 1214, 1217 (Pa.Cmwlth.2000).

■ Alternatively, Claimant argues that the WCJ did not render a reasoned decision with respect to Dr. Bonner's testimony. Claimant contends that the WCJ did not give adequate reasons for finding Dr. Bonner credible and did not reconcile Dr. Bonner's testimony that Claimant's cervical spine condition is not ratable with the testimony of Claimant's experts that he has a work-related cervical condition.

■ Section 422(a) of the Act [14] requires a WCJ to issue a reasoned decision "containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions." 77 P.S. § 834. Our Supreme Court has held:

> A decision is "reasoned" for purposes of Section 422(a) if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. A reasoned decision is no more, and no less.

*Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 574 Pa. 61, 76, 828 A.2d 1043, 1052 (2003). Unless a credibility assessment is tied to a witness's demeanor before the WCJ,

> some articulation of the actual objective basis for the credibility determination must be offered for the decision to be a "reasoned" one which facilitates effective appellate review.

*Id.* at 78, 828 A.2d at 1053. The WCJ's decision is reasoned under these standards.

---

14. Section 422(a) provides in relevant part:

All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review. 77 P.S. § 834.

**1288**

■ First, the WCJ articulated his reasons for crediting Dr. Bonner's testimony. The WCJ explained that Dr. Bonner was certified by the Bureau of Workers' Compensation to conduct IREs and thoroughly explained the IRE system for evaluating Claimant's shoulder, neck and back.[15] Claimant simply disagrees with the WCJ's credibility determination, which the WCJ alone has the power to make.[16]

Second, there is nothing inconsistent about the WCJ crediting both the testimony of Claimant's expert that he had sustained a work-related cervical spine injury and the testimony of Dr. Bonner that Claimant's cervical injury was not ratable. Claimant's doctors diagnosed a neck injury based on Claimant's subjective pain complaints, not objective evidence. Dr. Bonner acknowledged those subjective pain complaints. However, in order to make an impairment rating, there must be objective findings. Dr. Bonner never stated that Claimant did not sustain a neck injury, only that it could not be rated because there was no objective evidence of a neck problem.

■ We now turn to Employer's appeal. Employer first argues that the WCJ erred in allowing Claimant to depose Dr. Bonner over Employer's objection. Employer asserts that once Employer secured an impairment rating of less than fifty percent from Dr. Bonner and changed Claimant's disability status to partial disability by sending him the Notice, the only way Claimant could challenge his impairment rating was to first obtain another impairment rating equal to or greater than fifty

percent impairment. Because Claimant did not obtain such an impairment rating, Employer argues, Claimant should not have been permitted to challenge Dr. Bonner's IRE.

In support, Employer points to Section 306(a.2)(4) of the Act which provides in relevant part:

> An employe may appeal the change to partial disability at any time during the five hundred-week period of partial disability; Provided, That there is a determination that the employe meets the threshold impairment rating that is equal to or greater than fifty per centum impairment....

77 P.S. § 511.2(4). However, Section 306(a.2)(4) does not apply to this case.

This Court recently considered the process for challenging a change in disability status in *Johnson v. Workers' Compensation Appeal Board (Sealy Components Group)*, 982 A.2d 1253 (Pa.Cmwlth.2009). We explained that where an employer sends the claimant a notice that it intends to change the claimant's disability status as a result of an IRE, the claimant may appeal. However, the claimant must do so within sixty days of the notice. If the claimant does not challenge the notice before the change in status becomes effective, the claimant can no longer challenge the initial IRE determination. At that point, Section 306(a.2)(4) becomes applicable and the claimant must then obtain a new impairment rating of at least fifty percent in order to file a petition to change his disability status back to total.

Here, Employer sent Claimant a notice of change in benefit status based on Dr. Bonner's IRE. Claimant timely filed re-

---

**15.** As Employer points out, Dr. Bonner's testimony was uncontradicted because Claimant did not present evidence from any other expert that Dr. Bonner's IRE was performed improperly.

**16.** The WCJ is the ultimate factfinder and has complete authority over questions of credibility. *Davis v. Workers' Compensation Appeal Board (City of Philadelphia)*, 753 A.2d 905, 909 (Pa.Cmwlth.2000).

view petitions challenging the change in status, *i.e.*, before the change became effective. As *Johnson* makes clear, Claimant was not required to obtain an impairment rating of at least fifty percent before appealing. Thus, the WCJ did not err in allowing Claimant to depose Dr. Bonner over Employer's objection.

■■■ Next, Employer argues that it was error for the Board to find that Dr. Bonner's deposition was taken in defense of Employer's termination petition. Claimant deposed Dr. Bonner solely to challenge the IRE determination. Further, because Dr. Bonner's deposition relates only to a matter on which Claimant did not prevail, it was error for the Board to order the reimbursement of Claimant's cost to depose Dr. Bonner. We agree.

Section 440(a) of the Act, 77 P.S. § 996(a),[17] authorizes an award to a claimant for "a reasonable sum for [litigation] costs." Section 440(a) states, in relevant part, as follows:

> In any contested case where the insurer has contested liability in whole or in part, ... the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings....

77 P.S. § 996(a). This Court has held that in order for litigation costs to be considered reasonable, and thus reimbursable, they must "relate to the 'matter at issue' on which Claimant prevailed." *Jones v. Workers' Compensation Appeal Board (Steris Corp.)*, 874 A.2d 717, 722 (Pa. Cmwlth.2005).

As found by the WCJ, Dr. Bonner's deposition was taken solely to challenge the IRE determination and not to defend against Employer's termination petition. At the outset of the deposition, Claimant's counsel stated that he also intended to use Dr. Bonner's testimony in opposition to Employer's termination petition, as well as to support Claimant's challenge to the IRE. However, Dr. Bonner never testified in his deposition about whether Claimant was able to perform his pre-injury job. By contrast, Claimant's medical experts, Dr. Rushton and Dr. Mela, both specifically opined that Claimant had not fully recovered from his work injuries. Dr. Mela opined that Claimant could not perform his pre-injury job. The WCJ relied on their testimony, not Dr. Bonner's, to deny Employer's termination petition.

■■■ In any case, Dr. Bonner could not offer testimony relevant to Employer's termination petition because he did not do an IME to determine whether Claimant was disabled. Rather, Dr. Bonner performed an IRE to determine impairment. As this Court has explained, the determination of impairment and the determination of disability are separate and unrelated. *Sign Innovation v. Workers' Compensation Appeal Board (Ayers)*, 937 A.2d 623, 628–629 (Pa.Cmwlth.2007). The purpose of the IME is to determine whether a claimant can do his pre-injury job, and the purpose of the IRE is to determine the extent of permanent impairment, which impairment may, or may not, affect the claimant's ability to work. *Diehl v. Workers' Compensation Appeal Board (IA Construction and Liberty Mutual Insurance)*, 972 A.2d 100, 107–108 (Pa.Cmwlth.2009), *appeal granted*, —— Pa. ——, 982 A.2d 1219 (2009).[18] Dr. Bonner's testimony necessarily pertained only

---

**17.** Section 440 was added by the Act of February 8, 1972, P.L. 25, *as amended*.

**18.** *See also Weismantle v. Workers' Compensation Appeal Board (Lucent Technologies)*, 926

to Claimant's challenge of the IRE determination. Because Claimant did not prevail in his IRE challenge, Claimant's cost to depose Dr. Bonner is not a reimbursable litigation cost.

■■■ Employer requests the Court to order Claimant's counsel to disgorge the $3,000 payment made by Employer while the matter was litigated. The Board denied Employer's supersedeas and, thus, Employer was required to pay Claimant's counsel the $3,000 for Dr. Bonner's deposition while it challenged that aspect of the WCJ's decision. Employer points out that supersedeas fund reimbursement is not available for litigation costs. *Universal AM–CAN, Ltd. v. Workers' Compensation Appeal Board (Minteer)*, 870 A.2d 961 (Pa. Cmwlth.2005). Unless this Court orders Claimant's counsel to disgorge the $3,000, its appeal will be meaningless and Claimant will enjoy an unjust enrichment.

Employer offers two cases to support its argument, namely *Kiebler v. Workers' Compensation Appeal Board (Specialty Tire of America)*, 738 A.2d 510 (Pa. Cmwlth.1999), and *Fahringer, McCarty & Grey, Inc. v. Workmen's Compensation Appeal Board (Green)*, 107 Pa.Cmwlth. 597, 529 A.2d 56 (1987). These cases held that a claimant may be ordered to return overpayments where there has been an error in the nature of a mathematical miscalculation of benefits. That is not the situation here. Nevertheless, these cases support the concept that an overpayment can be corrected. Further, our jurisprudence forbidding the return of overpayment of compensation benefits

by a claimant[19] has no relevance here because litigation costs, not compensation benefits, are at issue.

Because the WCJ erroneously ordered Employer to pay $3,000, the WCJ can order Claimant's counsel to refund the overpayment. Such an order, while unusual, is not without precedent. *See Lucey v. Workmen's Compensation Appeal Board (Vy–Cal Plastics PMA Group)*, 557 Pa. 272, 732 A.2d 1201 (1999) (where the WCJ ordered the claimant's counsel to disgorge $35,109.27 that had been improperly awarded as counsel fees). It is Claimant's counsel that will be affected, not Claimant, and it will not affect Claimant's compensation benefits.

Accordingly, we reverse the portion of the Board's order holding Employer responsible for paying Dr. Bonner's deposition fee, and affirm in all other respects.

Judge PELLEGRINI concurs in the result only.

### ORDER

AND NOW, this 2nd day of February, 2010, the order of the Workers' Compensation Appeal Board dated March 17, 2009, in the above captioned matter is hereby REVERSED insofar as it held Employer responsible for paying for the deposition of Dr. Bonner. Claimant's counsel shall refund $3,000 to Employer. The Board's order is AFFIRMED in all other respects.

---

A.2d 1236, 1240 (Pa.Cmwlth.2007) (explaining that "an IRE is quite different in scope from an independent medical examination undertaken to determine whether a claimant can perform the pre-injury job.").

19. *See, e.g., Hurst v. Workers' Compensation Appeal Board (Preston Trucking Co.)*, 823 A.2d

1052, 1060 (Pa.Cmwlth.2003) (explaining that where there has been an overpayment of indemnity benefits to a claimant who is not entitled to those payments, the employer must obtain reimbursement from the supersedeas fund, not the claimant).