**Wayne WEISMANTLE, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (LUCENT TECHNOLOGIES), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 22, 2006.

Decided June 18, 2007.

Daniel K. Bricmont, Pittsburgh, for petitioner.

James D. Strader, Pittsburgh, for respondent.

BEFORE: COLINS, President Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.[1]

Wayne Weismantle (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) terminating his workers' compensation disability benefits. The issue we consider in this case is whether an employer's placement of a claimant on partial disability during the pendency of that employer's termination proceeding bars any further action by the Workers' Compensation Judge (WCJ) on the termination petition.

In November of 2001, Claimant began to collect total disability benefits for a lower back strain suffered in 1999 while in the employ of Lucent Technologies (Employer). On January 8, 2003, Employer filed a termination petition based upon the report of its board-certified physician, Michael W. Weiss, M.D., that Claimant was fully recovered from his work injury as of August 26, 2002.[2] While the outcome of the termination proceeding was pending, Claimant reached the point of having collected total disability benefits for 104 weeks. Accordingly, Employer requested Claimant to undergo an Impairment Rating Evaluation (IRE), which was conducted by Ronald Glick, M.D., on November 11, 2003. Claimant was found to have a 10 percent

---

1. The case was reassigned to the author on May 8, 2007.

2. Dr. Weiss opined that Claimant exhibited symptom magnification and fabrication because there was no effacement of the nerve root and no evidence of an anatomic abnormality. An MRI showed degenerative changes with a mild disc bulge on August 21, 2002, and an EMG from October 9, 2002, was normal. Claimant's expert physiatrist, Dr. Judith Esman, testified that the October 2002 EMG showed no evidence of lumbar radiculopathy and that a 2002 MRI showed degenerative changes but no herniation or protrusion.

impairment rating. On December 12, 2003, Employer notified Claimant that he was being placed on partial disability as of November 11, 2003.

■ On April 9, 2004, the WCJ denied Employer's termination petition for the stated reason that Employer acknowledged that Claimant was impaired as of November 11, 2003, by placing him on partial disability. The WCJ did not make any factual determinations with respect to any of the evidence presented in the termination proceeding. On appeal, the Board held that the WCJ was incorrect in her assumption that an impairment rating of 10 percent barred an employer from seeking a termination of disability benefits, explaining that nothing in the Workers' Compensation Act[3] (Act) or the case law prohibits an employer from pursuing an IRE and a termination of benefits simultaneously. Therefore, the Board vacated and remanded for a decision on the merits of the termination petition. On remand, the WCJ terminated Claimant's benefits, finding that he had fully recovered from his injury as of August 26, 2002.[4] Claimant appealed, and the Board affirmed. Claimant now petitions for this Court's review.[5]

■ On appeal, Claimant raises one issue. He contends that once Employer obtained an IRE indicating 10 percent impairment and filed a notice of change of status with the Bureau of Workers' Compensation, it was foreclosed from seeking termination of Claimant's benefits as of a date prior to the date of the IRE.[6] Employer counters that the Act does not correlate the timing of the IRE with the timing of a termination of benefits. In support of its argument, Employer relies on *Schachter v. Workers' Compensation Appeal Board (SPS Technologies)*, 910 A.2d 742 (Pa.Cmwlth.2006).

In *Schachter*, this Court also considered the relationship between an IRE and a termination of benefits. There, the claimant's IRE resulted in a finding that he had a 6 percent work-related impairment, and the employer changed the claimant's status from total disability to partial disability. Thereafter, the employer sought a termination of benefits, asserting a full recovery by claimant. The claimant argued that the employer could not do so because it had already been determined that the claimant had a 6 percent permanent impairment. We held that a finding of a 6 percent impairment is neither a judicial admission nor *res judicata* for purposes of filing a subsequent termination petition. *Id.* at 746. We also explained that "the IRE remedies . . . are in addition

---

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2626.

4. The WCJ accepted as credible the opinion of Dr. Weiss that Claimant fully recovered from his work injury and could work without restrictions. The WCJ did not credit the testimony of Claimant and Dr. Esman that Claimant had not fully recovered. A termination of benefits is appropriate where the employer proves that the claimant fully recovered from his work injury and can return to work without restrictions, and that there are no objective medical findings that either substantiate claims of pain or connect them to the work injury. *Udvari v. Workmen's Compensation*

Appeal Board (USAir, Inc.), 550 Pa. 319, 327, 705 A.2d 1290, 1293 (1997).

5. This Court's scope and standard of review of an order of the Board are limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

6. Claimant does not argue that Dr. Weiss's credible testimony is not substantial, competent evidence to support a termination of benefits.

to, not a replacement of, the remedies available to an employer who believes that an employee's loss of wages is not the result of a work-related injury." *Id.*

Claimant would limit *Schachter's* holding to the exact sequence of events that occurred in that case: an IRE request followed by a termination petition. Here, because the termination petition was filed prior to Employer's IRE request, Claimant argues that *Schachter* is not dispositive. Claimant asserts that if Employer wanted to pursue an IRE, it had to withdraw the termination petition and have a new independent medical examination conducted to determine whether Claimant had recovered. In support of his argument, Claimant relies on *Sharon Tube Company v. Workers' Compensation Appeal Board (Buzard)*, 908 A.2d 929 (Pa.Cmwlth.2006).

In *Sharon Tube*, the claimant, who had returned to work with a loss of earnings as of July 21, 2003, again stopped working. The employer and the claimant then executed a supplemental agreement, specifying that the claimant was totally disabled as a result of his work injury as of July 28, 2003. Thereafter, the employer filed a petition to modify the claimant's benefits as of July 21, 2003, alleging that the claimant had some earning capacity. This

Court held that the employer's execution of the supplemental agreement reflected the employer's acknowledgement that claimant's total disability had recurred. This Court rejected the employer's more limited characterization of the supplemental agreement, *i.e.*, that it showed only that the claimant had stopped working. Stated otherwise, a supplemental agreement may not be modified retroactively. To have benefits modified pursuant to Section 413 of the Act, 77 P.S. § 772,[7] an employer must prove that a claimant's condition has changed since the date of the supplemental agreement.

Claimant argues that the logic of *Sharon Tube* should be applied here. He contends that Claimant's IRE had the effect of mooting Employer's termination petition. We disagree. In *Sharon Tube*, the employer's signing of the supplemental agreement and its filing of the modification petition were matters entirely within the employer's control. That is not the case here.

An employer seeking a change from total disability to partial disability based on an IRE must do so within the strict time requirements of Section 306(a.2)(1) of the Act, 77 P.S. § 511.2(1).[8] To obtain a uni-

---

7. Section 413(a) provides in relevant part:

   \* \* \*

   A workers' compensation judge ... may, at any time, modify, reinstate, suspend, or terminate a ... supplemental agreement ... upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased....

   77  P.S. § 772.

8. Section 306(a.2)(1) of the Act, added by the Act of June 24, 1996, P.L. 350 states:

   (1) When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred four weeks, unless otherwise agreed to, the employe

shall be required to submit to a medical examination *which shall be requested by the insurer within sixty days upon the expiration of the one hundred four weeks to determine the degree of impairment due to the compensable injury, if any.* The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

77  P.S. § 511.2(1) (emphasis added).

lateral change from total disability to partial disability, an employer must request an IRE no earlier than the date on which claimant has received benefits for 104 weeks[9] and no later than 60 days thereafter. *See Dowhower v. Workers' Compensation Appeal Board (CAPCO Contracting)*, 591 Pa. 476, 919 A.2d 913, 917–918 (2007) (holding that an IRE cannot be requested too early, *i.e.*, before 104 weeks have elapsed, or too late, *i.e.*, 61 days after the 104–week period has elapsed). A request for an IRE must be timed just right, *i.e.*, within the 60–day window. *See also Gardner v. Workers' Compensation Appeal Board (Genesis Health Ventures)*, 585 Pa. 366, 888 A.2d 758 (2005). There is no exception from this deadline for the case where a termination is pending. If this deadline is not met, the employer forever loses the opportunity to change the claimant's disability status to partial disability if the IRE shows an impairment of less than 50 percent. *Id.* at 382, 888 A.2d at 767–768.

■ Further, the inquiry made in an IRE is not the same as the inquiry made in a termination petition. An IRE is governed by the American Medical Association's "Guides to the Evaluation of Permanent Impairment." These guidelines are designed to determine impairment, not to determine whether an individual can perform his pre-injury job, *i.e.*, his degree of disability.[10] As noted by Employer, the medical examination for an IRE is quite

different in scope from an independent medical examination undertaken to determine whether a claimant can perform the pre-injury job.

Claimant urges that there must be a logical timeline between an IRE and a termination. This might be desirable in the abstract, but it is not possible given the strict statutory deadlines that govern an IRE. As we held in *Schachter*, the Act gives an employer the right to pursue an IRE and a termination without regard for the other, because "IRE remedies … *are in addition to, not a replacement of,* the remedies available to an employer who believes that an employee's loss of wages is not the result of a work-related injury." *Schachter*, 910 A.2d at 746 (emphasis added). Employer cannot control the speed by which its termination petition is adjudicated. In the meantime, Claimant reached the 104–week mark, triggering the 60–day window for Employer to request an IRE.[11] If Employer did not do so, the opportunity would have been lost.

For these reasons, we hold that an employer's request for an IRE does not moot an employer's pending termination petition. Accordingly, the Board's order is affirmed.

### ORDER

AND NOW, this 18th day of June, 2007, the order of the Workers' Compensation

---

9. Section 306(a.2)(2) of the Act, 77 P.S. § 511.2(2), provides that if the impairment rating is less than fifty percent impairment, an employer may change benefits to partial disability provided that it gives sixty days' notice of modification.

10. Under workers' compensation law, "disability" is defined as the loss of earning power attributable to the work-related injury. *Landmark Constructors, Inc. v. Workers' Compensation Appeal Board (Costello)*, 560 Pa. 618, 625, 747 A.2d 850, 854 (2000). Stated

otherwise, an individual may be impaired physically, but the impairment does not affect the individual's earning capacity.

11. Claimant was not disadvantaged. Pursuant to Section 306(a.2)(3) of the Act, 77 P.S. § 511.2(3), his benefit rate stayed the same although his status was changed to partial disability by the notice of change in status during the pendency of the termination petition. However, the outcome of the termination petition was the finding that Claimant was not even entitled to partial disability.

Appeal Board dated June 26, 2006 in the above captioned case is hereby affirmed.

### DISSENTING OPINION BY President Judge COLINS.

I respectfully dissent to this thoughtful majority opinion. I disagree with the majority's conclusion that termination petitions and Independent Rating Evaluation (IRE) proceedings may operate in complete conjunction with each other even though they are distinct and entirely unrelated processes. I believe that the filing of Employer's termination petition before requesting an IRE requires a different result.

Although the majority correctly quotes this Court's reasoning in *Schachter v. Workers' Compensation Appeal Board (SPS Technologies)*, 910 A.2d 742 (Pa. Cmwlth.2006) to the effect that IRE remedies are supplemental to those other remedies an employer may pursue when it believes that a disability is not work-related, I believe that the holding in *Schachter* should be limited to situations in which an employer files a termination petition following the initiation of IRE proceedings.

As the majority notes, when the IRE examination indicates that a claimant has an impairment of less than fifty percent, employers or insurers are obligated to pay claimants partial benefits rather than total benefits. Following such an examination, unless earning power is "otherwise adjudicated," the employer or insurer may not change the amount of compensation. Section 306(a.2)(3), 77 P.S. § 511.2(3). I agree that a termination proceeding is one that could result in an adjudication, thus providing an employer with a means of changing compensation. I also agree that, although this case is different from *Schachter*, the IRE proceedings provided Employer with an intermediate recourse, permitted by statute, that enabled Employer to obtain the interim relief available in the IRE process, while still contesting Claimant's disability through its termination petition.

However, in such cases, I believe that the Board, while correct in concluding that the IRE procedure provides an alternative means to obtain a mitigation of liability until such time, and if, a workers' compensation judge renders a decision on a termination request, I would conclude that in such cases where an employer files a termination petition and before resolution of that petition obtains an IRE, the ultimate decision of a workers' compensation judge must reflect the IRE such that the termination cannot be held to be effective before the employer files a Notice of Change based upon a favorable IRE.

Because the WCJ determined that the date upon which Claimant had recovered was a date before the IRE was conducted, I would vacate and remand the Board's order and direct the Board to remand the matter to the WCJ to designate the date of Claimant's recovery and the corresponding date of termination as the date of the IRE, November 11, 2003.