Timothy DIEHL, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (IA CONSTRUCTION and Liberty Mutual Insurance), Respondents.**

Commonwealth Court of Pennsylvania.

Argued Nov. 12, 2008.

Decided April 22, 2009.

---

David J. Selingo, Kingston, for petitioner.

Thomas P. Cummings, Moosic and Peter J. Weber, Philadelphia, for respondents.

Daniel K. Bricmont, Pittsburgh, for amicus curiae, Pennsylvania Ass'n for Justice.

BEFORE: LEADBETTER, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge[1], COHN JUBELIRER, Judge, SIMPSON, Judge and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Timothy Diehl (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) ordering a change in Claimant's disability status from total to partial disability based on the results of Claimant's impairment rating evaluation (IRE). The Board held that this change in Claimant's disability status, which had no impact on the amount of Claimant's weekly disability benefits, did not require IA Construction (Employer) to prove job availability. In this appeal, we consider what proof is required where an employer seeks to modify a claimant's disability status on the basis of an IRE requested more than 60 days after the claimant has collected 104 weeks of total disability.

The facts of this case are not in dispute. Claimant sustained a work-related injury to his right foot on May 24, 1999, and Employer began paying Claimant total disability benefits. By May 24, 2001, Claimant had collected total disability for 104 weeks. To effect a unilateral change in Claimant's disability status, Employer had to request an IRE within a 60–day period following Claimant's receipt of total dis-

---

1. The decision in this case was reached before Judge Friedman assumed the status of senior judge.

ability for 104 weeks, *i.e.*, between May 24, 2001, and July 24, 2001. *Gardner v. Workers' Compensation Appeal Board (Genesis Health Ventures)*, 585 Pa. 366, 888 A.2d 758 (2005). Employer requested the Bureau of Workers' Compensation to designate a physician to perform an IRE on April 4, 2002, long after the 60-day window had passed.

The first physician assigned by the Bureau to do the IRE refused the appointment. The second physician assigned, Michael Wolk, M.D., did the IRE on November 8, 2002. Dr. Wolk concluded that Claimant had an impairment of 28 percent. In January 2003, while this area of the law was still uncertain, Employer attempted to effect a unilateral change in Claimant's benefit status from total to partial on the basis of Dr. Wolk's IRE report. After Claimant challenged Employer's action, however, Employer abandoned this effort. In 2005, the Supreme Court issued its decision in *Gardner*, 585 Pa. 366, 888 A.2d 758, clarifying that an employer cannot effect a unilateral change in a claimant's disability status if it requests an IRE outside the 60-day window. Employer then filed a modification petition for the purpose of effecting a change in Claimant's benefit status from total to partial disability, but not for effecting a reduction in Claimant's disability compensation. The parties made the record on the modification petition by stipulation.

After reviewing the evidence, the WCJ concluded that Employer proved that Claimant was impaired to the level of 28 percent in accordance with Dr. Wolk's November 8, 2002, IRE findings. However, the WCJ believed that before Claimant's disability status could be changed from total to partial, Employer was also required to prove the availability of employment suitable for Claimant, either by a labor market survey or by a referral to actual jobs Claimant was capable of performing. Because Employer did not present this employment evidence, the WCJ denied Employer's request for modification.

Employer appealed, and the Board reversed. The Board held that because Employer sought a change in disability status, not a change in compensation amount, Employer did not have to present evidence of job availability. The Board affirmed the WCJ's conclusion that Employer proved that Claimant had a 28 percent impairment rating. In accordance with that finding, the Board ordered Claimant's disability benefit status changed from total to partial as of November 8, 2002. Claimant then petitioned for this Court's review.[2]

■ On appeal,[3] Claimant presents one issue for our consideration. Claimant contends that the Board erred. Claimant asserts that where the employer makes the IRE request more than 60 days after the claimant's collection of 104 weeks of total disability, the employer must present evidence of job availability. If not, the 60–

---

2. On April 28, 2008, this Court filed an opinion and order in this case; however, by order dated June 24, 2008, we granted reargument and vacated our prior opinion and order.

3. This Court's scope and standard of review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether

constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003). The issue in this case is primarily a question of statutory construction; therefore, this Court's standard of review is *de novo* and our scope of review is plenary. *Gardner*, 585 Pa. at 372 n. 4, 888 A.2d at 761 n. 4.

day deadline in the Workers' Compensation Act (Act)[4] is rendered meaningless.

Employer counters that where the modification petition seeks a change in benefit status, and not a reduction in compensation amount, the Act does not require evidence of job availability. Where the employer requests the IRE outside the statutory 60–day window the change in benefit status is not automatic, as it is for requests made during the 60–day window. Rather, the employer must present evidence to prove that the claimant has an impairment of less than 50 percent. Further, the claimant may present evidence to rebut the findings in the IRE report, which cannot be done where the change is effected unilaterally by the employer.[5]

We begin with a review of the Act's requirements relevant to modification petitions. Such petitions are filed in the circumstance where an employer seeks to change a claimant's benefit status or, alternatively, where an employer seeks to reduce a claimant's compensation amount.

■ A claimant who is injured and not capable of working is initially entitled to total disability benefits, because disability under the Act is synonymous with a loss of earning power. *Landmark Constructors, Inc. v. Workers' Compensation Appeal Board (Costello)*, 560 Pa. 618, 625, 747 A.2d 850, 854 (2000). An employer wishing to modify the claimant's total disability benefits to partial disability may do so, *inter alia*, by establishing that the claim-

ant has "earning power." Such a proceeding is governed by Section 306(b)(2) of the Act, which explains that earning power

> shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department,. private job placement agencies and advertisements in the usual employment area. *Disability partial in character shall apply if the employe is able to perform his previous work or can,* considering the employe's residual productive skill, education, age and work experience, *engage in any other kind of substantial gainful employment* which exists in the usual employment area in which the employe lives within this Commonwealth.

77 P.S. § 512(2) (emphasis added). By showing the availability of suitable employment that the claimant is capable of performing, located through a labor market survey, an employer may reduce the amount of a claimant's benefits from total to partial disability. Alternatively, the employer may show that the claimant can work by referring the claimant to specific job openings. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987).[6] Once the claimant's earning power is established under either method, the claimant's total disability benefit amount will be reduced to a partial disability benefit. Partial disability benefits are defined as

---

4. Act of June 2, 1915, P.L. 736, *as amended*, .77 P.S. §§. 1–1041.4, 2501–2708.

5. The Pennsylvania Association for Justice and the Workers' Compensation Appeal Board have both filed *amicus curiae* briefs in this case.

6. To satisfy the *Kachinski* test, the employer must refer the claimant to actual jobs that are

within the claimant's capabilities. However, with the post-*Kachinski* addition of Section 306(b)(2) to the Act in 1996, an employer may also use "expert opinion evidence," *i.e.*, a labor market survey, to establish job availability. 77 P.S. § 512(2). Since 1996, employers may use either the *Kachinski* test or the labor market survey to reduce the amount of a claimant's disability benefit from total to partial.

sixty-six and two-thirds per centum of the difference between the [pre-injury] wages of the injured employe ... and the earning power of the employe thereafter....

Section 306(b)(1) of the Act, 77 P.S. § 512(1).

In 1996, the General Assembly amended the Act to add Section 306(a.2).[7] This amendment established another approach to moving a claimant from total disability by examining the degree to which a claimant has been impaired by his work injury. This approach changes the claimant's disability status but does not change the claimant's compensation amount. *See* Section 306(a.2)(3) of the Act, 77 P.S. § 511.2(3).[8]

The impairment evaluation cannot be undertaken until a claimant has been on total disability for 104 weeks. Section 306(a.2)(1) of the Act provides:

> When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred four weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination *which shall be requested by the insurer within sixty days upon the expiration of the one hundred four weeks* to determine the degree of impairment due to the compensable injury, if any. The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in

this Commonwealth, who is certified by an American Board of Medical Specialties approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

77 P.S. § 511.2(1) (emphasis added). "Impairment" is defined in Section 306(a.2)(8)(i) as "an anatomic or functional abnormality or loss that results from the compensable injury and is reasonably presumed to be permanent." 77 P.S. § 511.2(8)(i). Section 306(a.2)(2) then instructs that if the claimant is found to have an impairment equal to or greater than 50 percent, then he is presumed to be totally disabled.[9] If the impairment rating is less than 50 percent, then the claimant's *status* changes to one of partial disability.

As noted, changing a claimant's "disability status" from total to partial does not affect the amount, or rate, of compensation. The claimant continues to be paid at the total disability rate. Changing the claimant's benefit status to partial disability, however, limits the claimant to 500 weeks of compensation, as is the case for all persons with a partial disability status,

---

7. Added by the Act of June 24, 1996, P.L. 350, commonly known as Act 57.

8. The text of Section 306(a.2)(3) appears in the text of the opinion, *infra*.

9. Specifically, Section 306(a.2)(2) provides:
   If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than fifty per centum impairment under the most recent edition of the American Medical Association "Guides to the Evaluation of Per-

manent Impairment," the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits under clause (a). If such determination results in an impairment rating less than fifty per centum impairment ... the employe shall then receive partial disability benefits under clause (b): Provided, however, That no reduction shall be made until sixty days' notice of modification is given.
77 P.S. § 511.2(2).

regardless of the reason therefor.[10]

The timing of the employer's IRE request affects how the claimant's change in disability status will be effected where the claimant's impairment is found to be less than 50 percent. The so-called "self executing" provision in Section 306(a.2)(2) allows the employer to change the claimant's disability status unilaterally after giving 60 days' notice to the claimant, so long as the employer has requested the IRE within the 60-day window. On the other hand, if the employer has requested the IRE after expiration of the 60-day window, the employer may not effect the change unilaterally. Rather, as pointed out by our Supreme Court in Gardner, 585 Pa. at 380, 888 A.2d at 766, the employer will have to obtain approval of a WCJ before changing the claimant's disability status.

To obtain this approval, the employer must "establish an impairment rating ... *via the traditional administrative process.*" *Gardner,* 585 Pa. at 380, 888 A.2d at 766 (emphasis added). It is the meaning of the phrase "traditional administrative process" that is at the heart of this case. First, there is a question about whether "process" means a hearing or simply a filing of a petition. Second, assuming a hearing is required, there is a question about what evidence needs to be presented.

Claimant argues that the employer cannot satisfy the "administrative process" simply by filing a modification petition and attaching an IRE report. Employer agrees that when dealing with a "late" or "out of time" IRE, the change of a claimant's disability status requires an agreement or adjudication; a mere petition is not enough. It appears that confusion on this point developed from a sentence in the Board's adjudication stating that Employer "was required to file a Modification Petition. Aside from that, we do not interpret the Act as placing any additional burden on [Employer]." Board Opinion, August 3, 2007, at 4. However, the Board has clarified its position in its *amicus curiae* brief filed with this Court. The Board explains that a "non-self-executing IRE must be presented to a WCJ, who must consider any countervailing evidence and make determinations as to the credibility and competency of the IRE, before it can be used to modify the claimant's benefits." Board *Amicus Curiae* Brief at 16.

The parties all agree that "administrative process," as the Supreme Court termed it in *Gardner,* means more than the filing of a modification petition. We likewise agree. This is consistent with Section 306(a.2)(5), which states that total disability shall continue until it is "adjudicated or agreed" otherwise. *See also Dowhower v. Workers' Compensation Appeal Board (Capco Contracting),* 591 Pa. 476, 485, 919 A.2d 913, 918 (2007) (noting that a change to partial disability after expiration of the 60-day window requires an adjudication or agreement). As explained by the Board, the "traditional administrative process" requires the parties to litigate the merits of an IRE modification petition before the WCJ as they would any other petition under the Act.[11]

---

10. Some claimants are placed on partial disability from the beginning, whether by agreement or adjudication. Section 306(b)(1) of the Act specifies that partial disability benefits "shall be paid during the period of such partial disability ..., but for not more than five hundred weeks." 77 P.S. § 512(1).

11. For example, the employer must prove, *inter alia,* that the claimant's impairment rating is less than 50 percent and that the claimant had reached maximum medical improvement at the time of the IRE. *Combine v. Workers' Compensation Appeal Board (National Fuel Gas Distribution Corporation),* 954 A.2d 776 (Pa.Cmwlth.2008). The claimant

The parties disagree, however, on the evidence that the employer must present, which brings us to the central question in this appeal. Claimant believes that the Act requires evidence about the claimant's earning power. In support, Claimant observes that Section 306(a.2)(5), which governs the IRE proceeding, refers to Section 306(b), which is the provision by which a claimant's disability rate is changed. A Section 306(b) proceeding expressly requires proof of earning power. Employer argues, however, that the reference to Section 306(b) is just that, a reference, and not an instruction. It argues that earning power is not applicable in an IRE proceeding. We agree with Employer.

In construing the Act, we are guided by the plain meaning of the words. If they are not explicit, then we turn to the canons of statutory construction. As explained by our Supreme Court in *Gardner*:

> We have stated that the best indication of legislative intent is the language of a statute. . . . Where the words of a statute are clear and free from ambiguity, the legislative intent is to be gleaned from those very words. . . . When the words of the statute are not explicit, the intention of [the] General Assembly may be ascertained by considering the factors enumerated at 1 Pa.C.S. § 1921(c), including, *inter alia*, the occasion and necessity of the statute, the consequences of a particular interpretation, or administrative interpretations.

*Gardner*, 585 Pa. at 372–373, 888 A.2d at 761–762 (quotations, citations omitted).

Looking at the words of the Act, we conclude that an employer is not required to prove earning power in this case in order to change a claimant's disability status.

Section 306(a.2)(6) of the Act states that a claimant "shall submit to an independent medical examination in accordance with the provisions of section 314 to determine the *status of impairment.*" 77 P.S. § 511.2(6) (emphasis added). Section 306(a.2)(6) speaks to impairment, not disability.

Section 306(a.2)(5) then provides two methods for effecting a change in status from total disability. The first method is by showing a change in earning power, and the second is by showing an impairment rating of less than 50 percent. Section 306(a.2)(5) states:

> (5) Total disability shall continue until it is adjudicated or agreed under clause (b) that total disability has ceased *or the employe's condition improves to an impairment rating that is less than fifty per centum* of the degree of impairment defined under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

77 P.S. § 511.2(5) (emphasis added).[12]

Claimant interprets the reference to the Section 306(b) method for changing a claimant's disability status to mean that evidence of earning power must be presented in a Section 306(a.2)(5) IRE proceeding.[13] Claimant's interpretation does

---

may present countervailing evidence, including, for example, an expert report that the impairment rating was incorrect. The WCJ must then consider and weigh the evidence, make credibility determinations, determine the competency of the evidence, and make the legal conclusion whether the employer has met its burden of proof. Such a process is

not automatic, as it is for the self-executing provisions.

12. "Clause (b)" signifies Section 306(b), which is the proceeding, as explained above, that governs the change in the amount of compensation from total to partial.

13. The dissent agrees, noting in its footnote 4 that a change in disability status is itself a

not withstand close scrutiny. The reference to Section 306(b) simply acknowledges that one way total disability status can end is in a Section 306(b) proceeding. However, that sentence goes on to provide "*or the employe's condition improves to an impairment rating that is less than fifty per centum.*" 77 P.S. § 511.2(5) (emphasis added). The use of the word "or" identifies the second method for changing a claimant's disability status. An employer is free to prove one or the other. However, the employer need not prove both earning power and level of impairment to effect a change in the claimant's disability status.

This conclusion is bolstered by Section 306(a.2)(3), which establishes two points. It first explains that a change in disability status using the impairment method does not affect the amount of compensation. It next clarifies that the claimant whose status has been changed by reason of a less than 50 percent impairment is not guaranteed 500 weeks of benefits at the total disability compensation rate, no matter what. If the claimant develops earning power during the 500 weeks of partial disability, then the employer may initiate another proceeding to address earning power alone. Section 306(a.2)(3) states:

> Unless otherwise adjudicated or agreed to based upon a determination of earning power under clause (b)(2), *the amount of compensation shall not be affected as a result of the change in disability status* and shall remain the same. An insurer or employe may, at any time prior to or during the five

hundred-week period of partial disability, show that the employe's earning power has changed.

77 P.S. § 511.2(3) (emphasis added). Accordingly, if the employer demonstrates that the claimant with a partial disability status develops earning power, then the claimant's rate of compensation will be reduced prior to conclusion of the 500 weeks. The provisions of Section 306(a.2)(3) would make no sense if the employer had to prove earning power in order to change the claimant's status in the first place.

Further, the General Assembly specifically required a determination of earning power in a Section 306(b)(2) proceeding, but it did *not* state such a requirement for a 306(a.2)(5) proceeding. Had the legislature intended to require earning power evidence in an IRE proceeding, it would have so stated, as it did in Section 306(b)(2).

The special IRE procedure "was part of the General Assembly's 1996 reform effort intended to reduce rising Workers' Compensation costs and restore efficiency to the Workers' Compensation system." *Hilyer v. Workers' Compensation Appeal Board (Joseph T. Pastrill, Jr. Logging)*, 847 A.2d 232, 235 (Pa.Cmwlth.2004). To require employers to prove earning power and job availability in a Section 306(a.2)(5) proceeding would not advance the 1996 reform goals for two reasons.

First, as Employer points out, the doctor at the IRE renders an opinion only about impairment.[14] Dr. Wolk did not

---

type of reduction in compensation. In this regard, the dissent relies principally on the Supreme Court's summary characterization of Section 306(a.2)(5) in *Gardner*. The dissent does not address Section 306(a.2)(3), which would have no meaning unless the legislature distinguished between a change in

disability status and a change in the rate of disability compensation.

14. *See Weismantle v. Workers' Compensation Appeal Board (Lucent Technologies)*, 926 A.2d 1236, 1240 (Pa.Cmwlth.2007) (explaining that the IRE "guidelines are designed to determine impairment, not to determine whether an individual can perform his pre-injury job,

opine about Claimant's work capabilities or restrictions. Therefore, Claimant would also have to attend an independent medical examination and a vocational evaluation in order for Employer to present proof of earning power in this proceeding. This outcome would fly in the face of this Court's decisions in *Schachter v. Workers' Compensation Appeal Board (SPS Technologies)*, 910 A.2d 742 (Pa.Cmwlth.2006), *Weismantle v. Workers' Compensation Appeal Board (Lucent Technologies)*, 926 A.2d 1236 (Pa.Cmwlth.2007), and *Sign Innovation v. Workers' Compensation Appeal Board (Ayers)*, 937 A.2d 623 (Pa. Cmwlth.2007), wherein we held that IRE remedies are separate from remedies involving actual ability to work.

Second, to require proof both of a claimant's level of impairment and a claimant's earning power would render the IRE provisions meaningless. If an employer seeking to change a claimant's disability status by IRE also had to prove earning power, there would be no reason for the employer ever to obtain an IRE. Instead, the employer would pursue only a modification based on earning power in order to reduce the claimant's compensation and begin the 500–week limit for partial disability. To allow an employer to pursue an IRE after the 60–day window has passed, but then require proof of earning power, effectively nullifies the IRE remedy.[15]

In summary, we hold that under the Act, an employer seeking to change a claimant's benefit status using results of an IRE requested outside the 60–day window must obtain an agreement from the claimant or an adjudication that the claimant's condition improved to an impairment rating less than 50 percent. Proof of earning power and job availability is not required.

Here, the parties submitted the case to the WCJ on a stipulation of facts and the results of Dr. Wolk's IRE. The WCJ specifically concluded that Employer met its burden of proving, pursuant to Dr. Wolk's opinion, that Claimant has an impairment rating of 28 percent. Employer's evidence in this Section 306(a.2)(5) proceeding did not have to address jobs available to Claimant. Therefore, Employer is entitled to a modification of Claimant's benefit status from total to partial as of November 8, 2002, the date of the IRE.

For these reasons, we affirm the Board's order.

### ORDER

AND NOW, this 22nd day of April, 2009, the order of the Workers' Compensation Appeal Board dated August 3, 2007, in the above captioned matter is hereby AFFIRMED.

DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent. As all participants recognize, the issue in this case is the meaning of Section 306(a.2)(5) and (6) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 511.2(5) and (6), as interpreted by the Supreme Court in *Gardner v. Workers' Compensation Appeal Board*

---

*i.e.,* his degree of disability" and that "an IRE is quite different in scope from an independent medical examination undertaken to determine whether a claimant can perform the pre-injury job.").

15. Indeed, as aptly noted by Torrey and Greenberg, "the legislature could not possibly have imagined the employer being obliged to undertake vocational rehabilitation in this context." DAVID B. TORREY AND ANDREW E. GREENBERG, WORKERS' COMPENSATION LAW AND PRACTICE § 6:47 n. 3 (2008).

*(Genesis Health Ventures)*, 585 Pa. 366, 888 A.2d 758 (2005). I agree with the Workers' Compensation Judge (WCJ) and with the three-member panel opinion filed April 28, 2008 but vacated in conjunction with granting reargument en banc and with the amicus Pennsylvania Association for Justice (PAJ). They are correct that an employer's effort to secure a change in a claimant's status beyond the period provided for securing a self-executing change to partial disability based upon an Impairment Rating Evaluation (IRE) requires a showing of job availability. The meaning of "traditional administrative process" is crucial to deciding this case.

There is no dispute that Timothy Diehl (Claimant) suffered a mid-foot fracture and a calcaneus (heel bone) fracture on May 24, 1999, as reflected in a notice of compensation payable, for which he received total disability payments. Under Section 306(a.2)(1) of the Act, 77 P.S. § 511.2(1), when a claimant has received total disability compensation pursuant to Section 306(a), 77 P.S. § 511, for a period of 104 weeks, unless otherwise agreed to, the claimant shall be required to submit to a medical examination that shall be requested by the insurer within 60 days upon the expiration of the 104 weeks to determine the degree of impairment due to the work injury, if any. The degree of impairment shall be determined based on an evaluation by a doctor of specified qualifications using the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment" (AMA Guides). Pursuant to Section 306(a.2)(2), 77 P.S. § 511.2(2), if the resulting impairment rating is 50 percent or

more the claimant shall be presumed to be totally disabled and shall continue to receive total disability payments under Section 306(a). If the rating is less than 50 percent, then the claimant shall receive partial disability payments under Section 306(b), 77 P.S. § 512, provided that no reduction shall be made until 60 days' notice of modification is given. These subsections provide for a self-executing, unilateral change of a claimant's status from total disability to partial disability.

The Supreme Court held in *Gardner* that the time periods specified in Section 306(a.2)(1) and (2) are mandatory.[1] It further held in *Gardner* that an employer who misses the mandatory 60–day window for making a request for an examination under Section 306(a.2)(1) is not barred from requesting an IRE and making use of the result. Section 306(a.2)(5), 77 P.S. § 511.2(5), provides that "[t]otal disability shall continue until it is adjudicated or agreed under clause (b) [*i.e.*, Section 306(b)] that total disability has ceased or the employe's condition improves to an impairment rating that is less than fifty per centum of the degree of impairment defined under the most recent edition of the [AMA Guides]." Section 306(a.2)(6), 77 P.S. § 511.2(6), provides that "[u]pon request of the insurer, the employe shall submit to an independent medical examination in accordance with the provisions of section 314 [77 P.S. § 651] to determine the status of impairment[,]" provided that the claimant shall not be required to submit to more than two such examinations under Section 306(a.2) in a twelve-month period. In *Gardner* the Supreme Court

---

1. In *Dowhower v. Workers' Compensation Appeal Board (CAPCO Contracting)*, 591 Pa. 476, 919 A.2d 913 (2007), the Supreme Court reaffirmed that holding and ruled that a request for an IRE that an employer made before the expiration of 104 weeks was contrary to the mandatory requirement and that the IRE that resulted from it was therefore void, even though the medical examination occurred after the 104–week period and the claimant did not object at the time.

stated that Section 306(a.2)(6) neither imposes a time restriction on an insurer's ability to make the request nor provides for an automatic reduction of benefits based upon the impairment rating. The court explained:

> Rather, a reduction of compensation to partial disability when the examination occurs under Subsection 6 is governed by Subsection 5, which requires an adjudication or agreement under 77 P.S. § 512 before benefits may be modified, where "total disability [has ceased] or the employe's condition improves to an impairment rating that is less than fifty per centum." 77 P.S. § 511.2(5).

> The General Assembly thus has supplemented the traditional approach for securing a reduction in benefits to partial disability by incorporating the concept of an IRE, providing for a self-executing automatic modification of benefits where an insurer secures a dispositive impairment rating within a defined time period, under 77 P.S. § 511.2(1)-(2), and affording insurers the opportunity to establish an impairment rating in other time periods to reduce benefits via *the traditional administrative process*, under 77 P.S. § 511.2(5-6).

*Id.*, 585 Pa. at 380, 888 A.2d at 766 (2005) (footnote omitted) (emphasis added).

The WCJ expressed very clearly his analysis on this point as follows:

> The Employer has argued that the *Gardner* ... Decision only requires the Employer to file a Modification Petition, where [it is] beyond the 60 days, in order to obtain a Modification. However, Your Judge finds the Employer's contention in this regard to be without merit. Once an employer has shown a change in the Claimant's physical condition, it is [its] burden of proof to show the availability of employment with the physical limitations imposed upon the Claimant by this work-related injury. The Employer has not met [its] burden of proof in this regard, and it is not entitled to a Modification of benefits. Your Judge finds and concludes that the mere filing of a Modification Petition is insufficient, as a matter of law, to warrant a Modification of the Claimant's benefits to partial disability. The Employer must either perform a work availability analysis pursuant to *Kachinski v. [Workmen's Compensation Appeal Board (Vepco Constr. Co.)*, 516 Pa. 240,] 532 A.2d 374 (Pa.1987), or a Labor Market Survey.

WCJ's Decision, p. 4. The majority agrees that the "traditional administrative process" referred to in *Gardner* involves more than the mere filing of a modification petition. The majority also agrees with the position of the Workers' Compensation Appeal Board (Board) and IA Construction and Liberty Mutual Insurance (Employer and Insurer) that the traditional administrative process means that the parties must litigate the merits of the IRE modification petition before the WCJ as they would any other petition, *i.e.*, by proving that the impairment rating is less than 50 percent and that the claimant had reached maximum medical improvement at the time of the IRE, subject to presentation of countervailing evidence by the claimant.

As the majority acknowledges, one recognized means of modifying a claimant's status from total to partial disability under Section 306(b) may include establishing "earning power" under Section 306(b)(2), 77 P.S. § 512(2), which shall be determined by the work that the claimant is capable of performing and shall be based upon expert opinion evidence that includes job listings from appropriate sources and

advertisements.[2] Partial disability shall apply if the claimant "is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth." *Id.* Another is through a *Kachinski* analysis, where the employer who seeks a modification must prove a change in condition and a referral to a then-open job or jobs within the claimant's physical and skill abilities.

I disagree, however, with the unsupported notion that an employer who misses the mandatory time for requesting an examination to secure automatic modification from total to partial disability may nonetheless accomplish the same result simply by conducting an exam at some later time, filing a modification petition and "litigating" the matter before a WCJ, *i.e.,* by proving that the IRE result in fact was less than 50 percent and that the claimant had reached maximum medical improvement at the time of the test. As the Court's former opinion noted, the Supreme Court in *Gardner* stated: "[A]n insurer may request an employee submit to an IRE beyond the sixty-day window; the consequences of such examination howev-

er, cannot operate to automatically reduce the claimant's benefits." *Gardner,* 585 Pa. at 382, 888 A.2d at 767. As PAJ submits, logic does not support the idea that the legislature would impose a strict time requirement on an automatic change in status and then allow an employer who had not complied to obtain essentially the same remedy at any time, even years later, merely by filing a petition and presenting the IRE results. The PAJ argues that the Supreme Court's reference in *Gardner* to "traditional administrative process" places this question squarely within the provisions of Section 306(b).[3]

Employer and Insurer argue that the interpretation of the WCJ is not consistent with the Supreme Court's decision in *Gardner.* They quote the second paragraph from the quotation from *Gardner* above, p. 110, and they then assert that the Supreme Court did not reference Section 306(b) in relation to the reduction of benefits by the traditional administrative process. As quoted above, however, the preceding paragraph expressly stated:

> Rather, a reduction of compensation to partial disability when the examination occurs under Subsection 6 is governed by Subsection 5, which requires an adjudication or agreement under 77 P.S. § 512 before benefits may be modified,

2. As Employer stresses, establishing earning power through such a labor market survey was an innovation added by the Act of June 24, 1996, P.L. 350, known as "Act 57," which also added the IRE provisions at issue here. In that sense, a labor market survey is not "traditional," although it was incorporated into Section 306(b), which does provide the traditional means by which to seek a modification.

3. In a reply brief, Employer and Insurer reiterate that Section 306(a.2) is concerned with analyzing "impairment," which is defined as "an anatomical or functional abnormality or loss that results from the compensable injury and is reasonably presumed to be perma-

nent." Section 306(a.2)(8)(i), 77 P.S. § 511.2(8)(i). Cases have distinguished between determination of "impairment" under Section 306(a.2) and determination of "disability," which is defined as the loss of earning power that is attributable to a work-related injury. *See Weismantle v. Workers' Compensation Appeal Board (Lucent Techs.),* 926 A.2d 1236 (Pa.Cmwlth.), *appeal denied,* 594 Pa. 718, 937 A.2d 448 (2007). Although the cases do distinguish between "impairment" and "disability," we should not lose sight of the fact that the purpose of creating an impairment rating is to assist in determining whether disability should be deemed to be total or partial.

where "total disability [has ceased] or the employe's condition improves to an impairment rating that is less than fifty per centum." 77 P.S. § 511.2(5).

*Gardner*, 585 Pa. at 380, 888 A.2d at 766. Of course, 77 P.S. § 512 is Section 306(b) of the Act.[4]

The WCJ and the original panel opinion correctly determined that the legislature did not intend for the non-self-executing procedure for modifying from total disability to partial disability under Section 306(a.2)(5) and (6), referred to by the Supreme Court as the "traditional administrative process," should be virtually as simple and automatic as those for the self-executing provisions under Section 306(a.2)(1) and (2).[5] Rather, the Supreme Court's discussion in *Gardner* indicates that it interprets these provisions to require that a traditional analysis, including a work availability analysis, accompany the "traditional administrative process." Because of the majority's misinterpretation of case and statutory law, I accordingly dissent.

4. The Supreme Court's use of the phrase "a reduction in compensation to partial disability" was not dictum but was central to its analysis. Section 306(a.2)(2), 77 P.S. § 511.2(2), recognizes that a change from total disability to partial disability is a "reduction" in compensation, even though the current rate does not change, by specifically providing that after such a change due to an IRE determination "no reduction shall be made until sixty days' notice of modification is given."

5. The majority in footnote 11 mischaracterizes this dissent by stating that it suggests that the process under Section 306(a.2)(5) and (6) would be automatic. The dissent clearly states that the non-self-executing procedures should not be virtually as simple and automatic as those for the self-executing procedures.