IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cheryl Roth, :
: No. 1440 C.D. 2016
Petitioner : Submitted: January 6, 2017
:
v. :
:
Workers' Compensation Appeal :
Board (Pennsylvania State :
System of Higher Education), :
:
Respondent :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                     FILED:  June 28, 2017


Cheryl Roth (Claimant) petitions for review of the July 27, 2016 order of the Workers' Compensation Appeal Board (Board) affirming the decision of a workers' compensation judge (WCJ) to grant the suspension petition filed by Pennsylvania State System of Higher Education/Kutztown University (Employer). We affirm.

Claimant was employed by Employer as a custodian from 2006 to 2014. On March 16, 2013, while shoveling snow, Claimant suffered a work injury to her lower back. Employer accepted the injury by way of a notice of compensation payable. Claimant returned to modified duty from September 2, 2013, to April 18, 2014, when Employer advised her that it could no longer

accommodate her restrictions. On September 24, 2014, based on an earning power assessment dated July 26, 2014, Employer filed a modification-suspension petition alleging that Claimant was capable of returning to full-time work with an earning capacity of between $400.00 to $472.50 per week.

At hearings before the WCJ, Employer presented the deposition testimony of Monique Sheppard, a certified rehabilitation counselor. Sheppard stated that she conducted a vocational interview with Claimant on May 19, 2014, during which they discussed Claimant's educational background, employment history, and physical limitations. Reproduced Record (R.R.) at 85a-92a. Thereafter, Sheppard conducted a labor market survey and identified four positions as vocationally and physically suitable for Claimant: a Front Desk Specialist position at Coordinated Health; a Patient Service Representative position at Patient First; a Teller position at Santander Bank; and a Customer Service Representative position at Susquehanna Bank. Sheppard visited each of the facilities and determined that each of the positions was open and available. She then prepared job descriptions for each position, setting forth the physical requirements, job duties, hours, wages, date available, and instructions for submitting applications, and sent them to Claimant. R.R. at 99a-105a. In her Earning Power Assessment Report, Sheppard relied upon the four positions she identified and opined that Claimant's residual earning capacity was $438.13. R.R. at 107a-111a.

Sheppard acknowledged that she does not list the qualifications for each job in her labor market surveys and earning assessment reports, but she stated that she always considers those qualifications in her assessments. She also noted that the information is available to prospective employees when they apply for the position. She explained that when employers set forth qualifications, they typically

state that certain experience and skills are preferred, but those qualifications are not absolute requirements to be considered for an entry level position.

Sheppard testified that Coordinated Health listed strong computer skills as a preference for hiring. She acknowledged that Claimant's computer skills were basic but explained that the employer provided on-the-job training. Sheppard said that requirements for the position at Patient First included basic computer skills, good communication skills, and basic math skills, and training was offered for that position as well. Sheppard further testified that after meeting with Claimant and speaking with her over the telephone, she believed that Claimant had the communication skills required for the customer service representative position at Susquehanna Bank.

Sheppard stated that the teller position at Santander Bank required only basic computer skills; she explained that the bank has its own computer system and would train a new employee on its use. Sheppard also noted that the qualifications for the teller position included three months' experience in handling cash, and she stated that Claimant had such experience. Although she acknowledged that Claimant's previous experience handling money was many years ago, she also believed that as long as a person knows the basic math involved in counting cash she would be able to perform the required duties.

Employer also presented the deposition testimony of Joshua Krassen, D.O., who began treating Claimant for the work injury on August 19, 2013. Dr. Krassen had placed restrictions on Claimant's activities, limiting her to lifting, carrying, pulling, and pushing up to about 10 pounds regularly and up to 25 pounds occasionally. Dr. Krassen testified that he reviewed the job descriptions prepared

3

by Sheppard and believed that all four of the positions were physically appropriate for Claimant.

Claimant offered the deposition testimony of John Dieckman, a certified rehabilitation counselor. Dieckman testified that he reviewed Sheppard's initial evaluation report, her earning power evaluation report, numerous medical reports from Dr. Krassen, and job descriptions he found online for the four positions identified by Sheppard as suitable and available. Dieckman agreed that the four positions were within Claimant's medical restrictions.

However, Dieckman opined that Claimant did not have the vocational background and qualifications to perform the identified jobs. He noted that Claimant left school in 11th grade and got her GED several years later, in 1977. He stated that Claimant was not qualified for the position at Coordinated Health because it required one or more years of previous work experience in a physician's office or hospital setting, excellent communication skills, and strong computer literacy. He also believed that Claimant lacked the minimum typing and data entry experience, as well as the strong verbal and written communication skills, sought by Patient First for the position of customer service representative. He testified that the customer service representative position at Susquehanna Bank required strong computer skills and strong communication skills, and Claimant had neither. Additionally, Dieckman said he was told by the manager at Santander Bank that the teller position required strong computer skills, and, again, Dieckman explained that Claimant's computer skills were "very, very elementary, to say the least." R.R. at 160a.

On cross-examination, Dieckman repeated his opinion that Claimant is not qualified for any of the four positions. He believed that she would need to

take classes for six to twelve months to become proficient in Word, Excel, etc. When pressed, Dieckman said that the position at Santander Bank would be the least skilled of the four jobs, but he emphasized that it too required strong computer skills. He added that although the bank offered a two-week training period, an applicant would have to qualify for the training.

Claimant testified at the June 23, 2015 hearing before the WCJ. Claimant stated that she worked as a custodian for Employer from 2006 to 2014, and her duties included shoveling, cleaning, vacuuming, waxing floors, cleaning bathrooms, collecting trash, climbing ladders, and changing light bulbs. She said that from 1981 to 2005, she worked as a Certified Nursing Assistant (CNA), which involved assisting residents with bathing, dressing, and transfers. R.R. at 214a-17a. Claimant, then 59, stated that she worked at a five and dime store when she was about 16 years old. R.R. at 220a.

Claimant testified that when she received the package of information from Sheppard about the four positions she called Sheppard out of concern that the jobs required computer experience. Claimant stated that she did not have a computer at home and used one at work with Employer only rarely, to check for details of monthly meetings on Employer's website. Claimant said she also advised Sheppard that she did not have the front desk experience required for one job, and she had no banking experience required for the others. Sheppard told Claimant that she should apply for those positions anyway and that she would receive on-the-job training.

Claimant testified that she applied for the jobs online by going to the local library and getting assistance with a computer from library staff. Claimant said she did not complete the application for the teller position at Santander Bank

because it required her Social Security number and she did not trust computers. She said she got no response to her applications for the other positions.

Claimant also testified that she asks about job openings if she goes into a store but has not formally completed any applications. She said that she receives Social Security disability benefits and recently started collecting a pension from Employer.

The WCJ found both vocational experts to be credible in part. The WCJ observed that there was no conflict as to Claimant's employment history and found Sheppard's testimony more credible as to Claimant's vocational history, and specifically, as to her ability to use a computer and deal with the public. The WCJ credited Claimant's testimony but found it insufficient to contradict the credible expert vocational opinions offered by Sheppard and Dieckman.

In the WCJ's Finding of Fact No. 51, the WCJ addressed the position at Santander Bank, stating as follows:

> This specific notation as to the on the job training provided by Santander Bank as testified to by both Vocational Experts coupled with Claimant's extensive history dealing with injured and recuperating patients while working as a Certified Nursing Assistant leads the undersigned Workers' Compensation Judge to conclude that with regard to the Bank Teller positon at Santander Bank Claimant is both vocationally and physically capable of performing that position. The Santander Bank position paid $11.00 per hour and was available for 40 hours per week. Therefore the undersigned Workers' Compensation Judge concludes that based upon the evidence as a whole Claimant had a residual earning capacity of $440.00 per week which would exceed her pre-injury Average Weekly Wage

WCJ's opinion at 7. The WCJ recognized Claimant's concern about her ability to utilize a computer, but he noted that the job description specifically states that the

6

company uses its own computer system and, consequently, any new employee would need training. The WCJ reasoned that, "[c]ertainly, a woman with Claimant's extensive employment history, as well as her life experience having handled her own personal finances for a period of years would have the ability to perform the entry level position of a bank teller." WCJ's Finding of Fact No. 52.

The WCJ concluded that Employer met its burden to prove that Claimant had a residual earning capacity of $440.00 per week based upon the available teller position at Santander Bank and granted Employer's suspension petition, effective July 26, 2014.

Claimant appealed to the Board, arguing that the WCJ erred in granting a suspension of benefits. Specifically, Claimant asserted that because Sheppard failed to list the job qualifications for the identified jobs in the labor market survey that she sent to Claimant, Sheppard's testimony was not competent to support a finding as to Claimant's earning capacity. The Board rejected that argument and explained that nothing in the Act, regulations, or precedent requires that job qualifications be listed in a labor market survey. The Board also concluded that the WCJ's finding regarding Claimant's earning capacity was supported by substantial evidence. Accordingly, the Board affirmed the WCJ's decision, and Claimant now appeals to this Court.

On appeal,[1] Claimant states that the "critical issue is whether the Earning Power Assessment supplied by the vocational expert should include job

---

[1] Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown),* 830 A.2d 649, 653 n.2 (Pa. Cmwlth. 2003).

7

qualifications." Claimant's brief at 10. Citing *Phoenixville Hospital v. Workers' Compensation Appeal Board (Shoap)*, 81 A.3d 830 (Pa. 2013), Claimant again argues that the WCJ erred in suspending benefits because Sheppard did not provide Claimant with the job qualications for each identified position.

Section 413 of the Workers' Compensation Act (Act)[2] provides that a party seeking a modification of benefits must demonstrate "that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased." 77 P.S. §772. In workers' compensation law, the term "disability" means the loss of earning power caused by the work injury. *Phoenixville Hospital*, 81 A.3d at 841. As our Supreme Court noted in *Phoenixville Hospital*, the legislature explained the meaning of "earning power" in 306(b)(2) of the Act,[3] as follows:

> (2) "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, *considering the employe's residual productive skill, education, age and work experience*, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth. . . . In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the department through regulation.

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §772.

[3] Added by the Act of June 25, 1996, P.L. 350, 77 P.S. §512(2).

8

77 P.S. §512(2) (emphasis added). A claimant's earning power may be established "[b]y showing the availability of suitable employment that the claimant is capable of performing, located through a labor market survey . . . ." *Diehl v. Workers' Compensation Appeal Board (IA Construction)*, 972 A.2d 100, 103 (Pa. Cmwlth. 2009).

Claimant asserts that because Sheppard failed to include specific job qualifications in the descriptions she sent Claimant, Claimant was unable to determine whether she was qualified for the positions. Claimant complains that she was placed in an unfair position of having to apply for jobs that she was not qualified for, wasting her time and resources. Based on these assertions, Claimant argues that the teller position at Santander Bank was not open and available to her.

However, Claimant does not contend that Sheppard's Earning Power Assessment failed to address her education, skills, and/or work experience. More important, Claimant does not explain how she was prejudiced by the alleged lack of sufficient details, which did not impede Claimant's opportunity to apply for any of the identified positions. Thus, we conclude that this argument is without merit.

Claimant also challenges the WCJ's decision that she possesses the requisite qualifications for the teller position at Santander Bank. However, the WCJ credited Sheppard's testimony that: the teller position required only basic computer skills; the bank had its own computer system and would train a new employee on its use; Claimant had sufficient experience handling cash; and Claimant would be able to perform the required duties. Because determinations of witness credibility and evidentiary weight are the prerogative of the WCJ, *Vols v. Workmen's Compensation Appeal Board (Alperin, Inc.)*, 637 A.2d 711, 714 (Pa. Cmwlth. 1994), this argument also fails.

Having determined that the WCJ's decision is supported by substantial evidence and discerning no error of law, we affirm the Board's order.

 

_____
MICHAEL H. WOJCIK, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cheryl Roth,                          :
                                      : No. 1440 C.D. 2016
                      Petitioner      :
                                      :
          v.                          :
                                      :
Workers' Compensation Appeal          :
Board (Pennsylvania State             :
System of Higher Education),          :
                                      :
                      Respondent      :


O R D E R


AND NOW, this 28<u>th</u> day of June, 2017, the order of the Workers'

Compensation Appeal Board, dated July 27, 2016, is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge